[No. B058479. Second Dist., Div. Four. July 23, 1991.]

KENNETH GOTTLIEB, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Trope & Trope, Eugene L. Trope, Mel Powell and Daniel G. Koryn for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

**OPINION**

**WOODS (A. M.), P. J.**—By the refiling of a mandate petition, which was summarily denied by this court upon its initial filing, a felony defendant asks this court to reconsider his challenge to the denial of his speedy trial motion.

Because this court viewed defendant's first petition to be totally without merit, and viewed the refiling of the petition with one additional exhibit to

be unwarranted, we issued an order directing defendant's appellate counsel, Trope & Trope, to show cause why monetary sanctions should not be imposed against it.

The premise of defendant's claim of denial of a speedy trial is that a delay of 10 years from his indictment to commencement of trial (together with the attendant stigma and stress of long-pending charges) constitutes a denial of his speedy trial rights even though he caused or consented to all delay and never asserted objection to delay prior to filing his motion to dismiss. Defendant contends that the burden is upon the prosecution and trial court, not defendants, to bring cases to timely trial, even when defendants claim good cause for their delay.

We conclude that the petition must be denied as frivolous and monetary sanctions should be imposed against appellate counsel. The petition ignores the controlling analysis and holding of *Barker* v. *Wingo* (1972) 407 U.S. 514, 529, 533, 534-536 [33 L.Ed.2d 101, 116, 118-120, 92 S.Ct. 2182], in a disingenuous manner.

We first summarize the procedural history of the underlying prosecution and of the defendant's two petitions.

*Procedural History.*

A. *The Trial Court Proceedings.*

In September 1981 defendant, an attorney, was indicted by a grand jury on 92 felony counts. The various counts allege a conspiracy to commit numerous acts of insurance fraud, forgery, grand theft, and attempted grand theft against numerous insurance carriers and claimants.

On May 2, 1991, nearly 10 years after defendant was indicted and only 13 days before a May 15 trial date, defendant filed a motion to dismiss for denial of his state and federal speedy trial rights. Defendant was at all times represented by a privately retained criminal law specialist.

Defendant's motion was premised on the theory that a delay of 10 years, of itself, constitutes deprivation of his rights. He also asserted that delays occurred between 1982 and 1984 "without his consent" and he "reserved the right" to supplement his motion with reporters' transcripts for the 1982 to 1984 period. But no such transcripts were ever offered.

The delay was not claimed to have prejudiced the defense case. Defendant was at all times at liberty.

The evidentiary showing in support of the motion consisted exclusively of municipal court docket entries and superior court minute orders, a copy of the information, and reporter's transcripts for proceedings on October 18, November 19, and December 5, 1990.

These exhibits show that all delay was either caused by defense motions for continuances, joint motions for continuances, vacated trial dates, defense motions to set aside the information (1985) and to recuse the district attorney (1991), and the addition of a second private defense counsel, Trope & Trope (1991). Neither defendant's motion nor any of the exhibits suggests that the prosecution occasioned any delay, let alone delay without good cause.

Few of the minute orders reflect the precise grounds for continuances. Those that do (from 1985 through 1990) cite as good cause for defense continuances: "further preparation" (Apr. 26, 1985); "counsel engaged" (Mar. 19, 1987); "further preparation" (Sept. 21, 1987); "counsel engaged" (Sept. 13, 1988); "further preparation" (Oct. 30, 1989); "more preparation" (Jan. 11, 1990); "further preparation of counsel" (Oct. 3, 1990-defendant files continuing waiver excusing his presence until trial); "defendant's counsel in trial" (Nov. 19, 1990); defense motion to recuse district attorney (set on Jan. 3, 1991 for hearing Feb. 25, 1991).

The motion claimed that from September 14, 1982, through April 1984 the prosecution "with no apparent good cause, intentionally sought continuances" and that "defendant did not agree to a waiver of time." But the municipal court docket sheets show that these continuances were upon stipulation by the parties. Defendant never submitted the promised proof that the prosecution obtained continuances without good cause over defendant's objection.

The reporter's transcript for October 18, 1990, reveals a one-month continuance was granted on joint motion to permit production of documents to defendant with a view toward settlement.

The reporter's transcript for November 19, 1990, shows the matter was trailed, on joint motion, for trial setting because defendant's counsel was engaged in another trial.

After substitution of Trope & Trope as cocounsel in early 1991, Trope filed the subject speedy trial motion on May 2, 1991. Trial had then been set for May 15, 1991.

Respondent denied the speedy trial motion after oral argument on May 10, 1991.

The transcript of the May 10 hearing (provided for the first time in the second mandate petition filed on May 16, 1991) reveals that the trial court denied defendant's motion because he submitted no showing that he ever objected to any delay; he caused the delay by repeatedly obtaining continuances and cannot now claim he was prejudiced by such delay, and his conduct showed he is, in reality, "in no hurry to get to trial."

The record raises no question as to the competency of defendant's counsel during the period in question; defendant continues to retain that counsel for trial.

B. *The Petitions for Mandate and Requests for Immediate Stay of Trial.*

Upon the filing of defendant's first mandate petition on May 13 (seeking to stay commencement of trial on May 15) we determined that the speedy trial motion below was wholly without merit and noted that it did not include a transcript of the May 10 hearing or an attorney declaration summarizing the hearing. Neither did the petition promise to lodge a copy of the transcript before the May 15 trial date.

We summarily denied the first petition "for absence of facts showing entitlement to extraordinary relief. (See also California Rules of Court, rule 56(c).)"

Three days after our denial of the first petition, defendant refiled. The refiled petition included a copy of the May 10, 1991, reporter's transcript. It sought an immediate stay of trial, which had been trailed to May 20.

We determined that the May 10 reporter's transcript further evidenced the total lack of merit in defendant's speedy trial motion. We also noted that the reporter's certificate for the transcript of the May 10th hearing states that the transcript was completed on May 10. The second petition averred in general terms that the transcript "was not available" for presentation with the May 13 petition, but there was no more detailed statement explaining this bare conclusion in light of the date of the reporter's certificate of completion.

On May 17 we issued a memorandum advising the parties and the trial court that we viewed the petition as frivolous, but would not deny it immediately because we wished to retain jurisdiction to consider imposition of monetary sanctions against counsel.

We concurrently issued an order to show cause requiring counsel who prepared the two petitions to demonstrate to us why monetary sanctions

should not be imposed against counsel for filing two frivolous petitions and for failing to demonstrate good reason for omitting the May 10 reporter's transcript from the first petition.

The return to the order to show cause argues that there is no justification for imposition of monetary sanctions because the speedy trial motion was potentially meritorious under federal speedy trial criteria, counsel consulted with another attorney who believed the speedy trial theory was a reasonable argument to be made, and counsel had no intent to delay, harass or hinder.

## DISCUSSION

### A. *Federal Speedy Trial Rights.*

We first address the merit of defendant's theory that his federal speedy trial rights were violated.

As mentioned, defendant's theory is that the fact of a 10-year delay before trial is, together with the claimed prejudice of having a prosecution hanging over his head, sufficient to compel dismissal under federal speedy trial standards. He claims the prosecution and trial court failed to discharge their duty to force him to trial earlier.

After careful review of the record and controlling law, we conclude that there is no possible merit to the defense theory that the criminal justice system must engage in self-flagellation by dismissing serious prosecutions because a defendant who has claimed good cause for and stipulated to a long series of delays later claims the trial court and prosecution denied him a speedy trial by granting the delays he sought.

We will demonstrate how our conclusion is compelled by the rule and holding of *Barker* v. *Wingo, supra,* 407 U.S. at page 529 [33 L.Ed.2d at p. 116].

Defendant correctly cites *Barker* v. *Wingo, supra,* 407 U.S. 514, as the case setting forth the four-factor balancing test for evaluation of claims of denial of federal speedy trial rights.

*Barker* v. *Wingo* creates a balancing test based upon four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (407 U.S. at p. 530 [33 L.Ed.2d at p. 117], fn. omitted.)

A reading of *Barker* v. *Wingo, supra,* reveals that defendant intentionally ignored its holding and its express prohibition against dismissal for delay caused by the defendant.

*Barker* v. *Wingo, supra,* applies its test to the facts before it (which facts are less favorable to the petitioner with regard to the "length of delay" and "reason for delay" factors) and squarely holds that a defendant may not prevail on a speedy trial claim when he has been represented by counsel at all times and failed to assert a timely speedy trial objection under circumstances strongly suggesting he does not want to go to trial and is gambling on benefiting from the delay.

In *Barker*, prosecution of the defendant was delayed for four years after indictment because the prosecution sought continuances to permit a prior separate trial of defendant's accomplice so the accomplice could testify at defendant's trial. Defendant, represented by competent counsel at all times, did not object to the delay for four years until his accomplice was finally convicted. Thereafter, the prosecution showed good cause for delay of an additional year before bringing defendant to trial.

*Barker* finds the dominant consideration to be the failure to assert a timely speedy-trial objection. It found defendant's acquiescence to the delay compelled the conclusion that he was gambling that his case would be dismissed if his accomplice were acquitted in a separate trial. (*Barker* v. *Wingo, supra,* 407 U.S. at p. 534 [33 L.Ed.2d at p. 119].)

We now quote at length the critical discussion in *Barker* because it is controlling on the facts of our pending petition: "More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial. Counsel was appointed for Barker immediately after his indictment and represented him throughout the period. No question is raised as to the competency of such counsel. Despite the fact that counsel had notice of the motions for continuances, the record shows no action whatever taken between October 21, 1958, and February 12, 1962, that could be construed as the assertion of the speedy trial right. On the latter date, in response to another motion for continuance, Barker moved to dismiss the indictment. The record does not show on what ground this motion was based, although it is clear that no alternative motion was made for an immediate trial. Instead the record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried . . . . The probable reason for Barker's attitude was that he was gambling on Manning's [his accomplice] acquittal. The evidence was not very strong against Manning, as the reversals and hung juries suggest, and Barker undoubtedly thought that if Manning were acquitted, he would never be tried. . . ." (*Barker* v. *Wingo, supra,* 407 U.S. at pp. 534-535 [33 L.Ed.2d at p. 119], fns. omitted.)

The *Barker* court then notes, at page 536 [33 L.Ed.2d at p. 120], that defendant Barker first raised a speedy trial objection only after his accomplice's conviction became final.

The court concludes with a paragraph having compelling application to our case (and revealing the disingenuous nature of appellate counsel's presentation of the issue without acknowledging to this court the holding of *Barker*): "We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted *ex parte*. But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial. We hold, therefore, that Barker was not deprived of his due process right to a speedy trial." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 536 [33 L.Ed.2d at p. 120]; see *People* v. *Perez* (1991) 229 Cal.App.3d 302 [279 Cal.Rptr. 915].)

Moreover, preliminary to evaluating the facts before it, the *Barker* court expressly rejects the validity of the argument that the prosecution and trial courts always have the primary duty to bring defendants to prompt trial: "But the rule we announce today [rejecting the "demand rule" that deems a defendant's lack of timely objection to delay an absolute bar to a speedy trial denial in all circumstances], which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. *We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside.*" (Italics added.) (*Barker* v. *Wingo, supra,* 407 U.S. at p. 529 [33 L.Ed.2d at p. 116]; *People* v. *Perez, supra,* 229 Cal.App.3d at p. 308.)

*Barker* also expressly rejects defendant's contention that the length of delay alone may constitute a denial of a speedy trial: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." (407 U.S. at p. 533 [33 L.Ed.2d at p. 118].)

 The record before us is an even more compelling showing than *Barker*. Defendant Gottlieb actively caused the 10-year delay and clearly did not want to go to trial. Here, there is more than the mere acquiescence of defendant in delay occasioned by the prosecution. Defendant Gottlieb was at all times represented by privately retained counsel and was promptly advised of his indictment. Defendant, an attorney, caused or consented to all the delays in his prosecution. He is charged with felony offenses involving moral turpitude. If convicted, his state bar license would certainly be revoked or suspended for a considerable time. During the pendency of the prosecution, he continues his ability to earn his livelihood practicing law.

We again emphasize that neither defendant's motion below nor either of his mandate petitions acknowledges the analysis or holding of *Barker* v. *Wingo, supra,* 407 U.S. 514. We consider counsel's treatment of *Barker* v. *Wingo* to manifest an improper purpose to delay and to deceive this court as well as the trial court.

Counsel's return includes a declaration of attorney Alan M. Dershowitz, listed as "of Counsel" on the mandate petitions. This declaration states in the most general terms that defendant's federal speedy trial contention is a legitimate argument because the state bears primary responsibility for bringing defendants to prompt trial.

This declaration does not improve cited counsel's position. The declaration is at most a statement of conclusion and a most general treatment of the issue. It wholly fails to address the point that *Barker* v. *Wingo, supra,* 407 U.S. 514, squarely rejected even less aggressive delay/demand-dismissal tactics than exhibited below by defendant Gottlieb and counsel. In fact, the declaration does not indicate that declarant is familiar with the controlling case.

B. *State Speedy Trial Rights.*

Defendant's claim of denial of speedy trial rights under the California Constitution, as implemented by Penal Code section 1382, is wholly without merit.

Although defendant's motion below initially suggested that prosecution continuance motions were granted over defendant's objection in 1982 through 1984, no corroboration of this assertion was ever presented.

■ It is well settled that to enforce a speedy trial right under Penal Code section 1382, a defendant must make a timely objection to continuances beyond the initial 60-day statutory period and thereafter make a prompt motion to dismiss. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 146-148 [32 Cal.Rptr. 44, 383 P.2d 452].)

C. *The Refiling of the Mandate Petition.*

■ We turn to the question of the motive and propriety of filing a second, substantively identical mandate petition after summary denial of the first.

While we question as unreasonable counsel's explanation that they interpreted our May 14 denial order as denying the first petition for lack of the

May 10, 1991 reporter's transcript, we do not necessarily find that interpretation cause to impose sanctions. We do, however, find inadequate the explanation given for the failure to file or lodge with this court by May 14 the May 10 transcript or a declaration satisfying California Rules of Court, rule 56(c)(4)(ii).

The second petition for mandate states: "At the time of the prior Petition for Writ of Mandate, the transcript of the May 10, 1991 proceeding was not available; it has now been prepared and a copy is attached hereto."

The return to the order to show cause states that at the time the first petition was ready to be filed, counsel "dispatched a messenger to obtain the transcript." But because of "scheduling conflicts" on the messenger's trip, counsel decided to file the petition without the May 10 transcript "and to add the transcript later." This explanation does not explain why the May 10 transcript was not lodged by May 14 or even state that the dispatched messenger was unable to obtain the transcript on May 13 or 14.

If counsel seeks immediate and special attention from this court by filing a request for a stay two days prior to trial, this court expects counsel not to hinder our screening of the emergency petition by failing to provide apparently available exhibits or information. The fact that this court was twice requested to issue an immediate stay compounds the burden upon this court and places the trial court in doubt as to whether a stay order might issue.

When considered together with the total lack of merit of the first petition, defendant's pattern of delay, and the fact the petitioner requested an immediate stay of an imminent May 15 trial, we find the omission to timely lodge the May 10 transcript (or even a declaration required by California Rules of Court, rule 56(c)(4)(ii)) to reflect either a casual disregard for this court or an intent to obtain a stay of trial by precluding this court from immediate consideration of what occurred at the May 10 hearing.

We are mindful that criminal defense attorneys are charged with the duty of asserting, on behalf of their clients, all theories having possible merit. But this duty does not validate or excuse petitions for extraordinary writ review that are patently frivolous, ignore clearly controlling law, and are filed at such time and in such manner as to require us to conclude that the petition was filed with the intent to delay and harass the courts and the prosecution.

### DISPOSITION

The petition for writ of mandate filed May 15, 1991, is denied.

Counsel for petitioner, Trope & Trope, and Eugene L. Trope, shall pay to the clerk of this court monetary sanctions in the amount of $5,000, within 10 days after this order becomes final as to this court. (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 16-18 [244 Cal.Rptr. 581]; *Kurokawa* v. *Blum* (1988) 199 Cal.App.3d 976, 995 [245 Cal.Rptr. 463]; Code Civ. Proc., §§ 1109, 907; Cal. Rules of Court, rule 26(a); *Coast Sav. & Loan Assn.* v. *Black* (1986) 187 Cal.App.3d 1494 [232 Cal.Rptr. 483]; *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 135-137 [260 Cal.Rptr. 369].)

George, J., and Goertzen, J., concurred.

Petitioner's application for review by the Supreme Court was denied October 3, 1991. George, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.