[No. B076930. Second Dist., Div. Four. Dec. 23, 1993.]

EMIL E. MANZETTI et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GLENN FITZGERALD, SR., et al., Real Parties in Interest.

COUNSEL

M. Edward Franklin for Petitioners.

No appearance for Respondent.

Thelen, Marrin, Johnson & Bridges and Robert Loeffler for Real Parties in Interest.

## OPINION

VOGEL (C. S.), J.—By filing a second petition for a writ of mandate following summary denial of a prior identical petition, Emil E. "Chuck" Manzetti and Alco Cad Nickel Plating Corporation ask this court to again review and consider the disposition of a motion to compel access to real property to conduct an inspection pursuant to Code of Civil Procedure

section 2031, subdivision (a)(3).[1] We issued an order to show cause why sanctions should not be imposed for filing of the second petition pursuant to sections 907 and 1109 and California Rules of Court, rules 26 and 135.

After a duly noticed order to show cause hearing, we now conclude that sanctions are justified.

## FACTUAL BACKGROUND

The underlying case involves the sale of an electroplating business by Glenn Fitzgerald, Sr., Glenn Fitzgerald, Jr., and Alco Plating Corporation et al. (collectively Fitzgerald), to Emil E. "Chuck" Manzetti and a lease by Fitzgerald to Manzetti and his corporation, Alco Cad Nickel Plating Corporation (collectively Manzetti), of Fitzgerald's plating facility. After Manzetti took possession of the facility, he discovered it was contaminated with hazardous waste materials. Environmental laws and regulations required a cleanup of the property with the costs imposed on Manzetti as the occupant and operator. Manzetti, claiming that Fitzgerald represented that the property was "clean" and otherwise free of environmental violations, wants to transfer the cost of the cleanup to Fitzgerald. Fitzgerald cross-complained for damage to the leasehold property and improvements.

## PROCEDURAL BACKGROUND

On May 13, 1993, Fitzgerald's counsel, Robert Loeffler, served Manzetti with a "Demand for Entry to Inspect, and to Measure, Survey, Photograph, Test and/or Sample (Code Civ. Proc., § 2031, subd. (a)(3))" the leased facility. As relevant, the demand read as follows: "No.1 [Fitzgerald] demand[s] that on June 12, 1993, at 9:30 a.m. or as soon thereafter as possible, you allow them, or someone acting on their behalf to conduct a visual inspection of the property and facilities at 1400 Long Beach Avenue, Los Angeles, California (the 'Property')."[2]

On June 1, Manzetti's counsel, M. Edward Franklin, responded to the demand by objecting on the grounds that (1) the request was vague and ambiguous and lacked sufficient specificity to determine whether Manzetti had an objection; (2) the inspection would duplicate prior visual inspections by Fitzgerald and his counsel to observe borings conducted by Manzetti; and

---

[1] All section references are to the Code of Civil Procedure.

[2] The demand included a request for permission to conduct boring and soil sampling on the premises, but this request was withdrawn.

(3) the inspection would impose a burden not justified by the relevance, if any, to the subject matter of the litigation.

On June 4, Loeffler sent a "meet and confer" memorandum to Franklin attempting to resolve the dispute. (§ 2031, subd. (*l*).) In response to the objection that the demand was "vague and ambiguous," Loeffler explained that "all we are going to do is make a visual inspection of the real property with respect to its condition and with respect to sources of contamination . . . and possibly to take pictures." Loeffler also explained that the inspection would not be duplicative of any earlier inspection because when Fitzgerald was previously on the site to observe Manzetti's drilling activities, Manzetti required Fitzgerald to stay close to the drillers and prevented him from making a general inspection. In answer to the "relevance and burden" objections, Loeffler pointed out that all claims related to the condition of the property and facilities. Finally, the memorandum stated that no drilling or soil sampling would take place. Manzetti's counsel refused to withdraw his objections.[3]

On June 10, Loeffler filed a motion to compel inspection of the property, setting the hearing for June 25. On the same date, he sent Franklin a letter advising that he was compelled to file the motion because of the pending discovery cutoff date, but proposed a protective order for the benefit of Manzetti according to their telephone discussions.

On June 16, Franklin filed a memorandum of points and authorities and his declaration in opposition to the motion to compel. The sole point of the opposition was that the original demand was for a visual inspection but the motion to compel requested an order to inspect to make measurements of the plant, facilities, and equipment and to take still and motion photographs and videotapes. Franklin characterized the expansion of the request to make a visual inspection as "related activity," and therefore contended it should have been in the original demand and specified according to section 2031, subdivision (c)(4).[4] In short, Franklin objected only to the *form* of the demand even though the *scope* of the requested inspection was fully disclosed in the June 4 memorandum and specified in the motion to compel. Franklin asserted no other grounds of opposition.

---

[3]A motion to compel "shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of any issue presented by it." (§ 2031, subd. (*l*).)

[4]A demand for inspection shall "[s]pecify any *related activity* that is being demanded in addition to an inspection and copying, as well as the manner in which that *related activity* will be performed, and whether that activity will permanently alter or destroy the item involved." (§ 2031, subd. (c)(4).) (Italics added.)

On June 23, Loeffler filed Fitzgerald's reply which included his declaration and correspondence between counsel concerning a proposed draft stipulation for a protective order.[5]

On June 25, the motion to compel was heard and granted by the trial court. In its minute order, the court found Manzetti's objections "vague and ambiguous," frivolous and without merit, and in bad faith. Sanctions were awarded in the amount of $1,520. No formal order was signed.

On June 28, Loeffler faxed a letter to Franklin: "This confirms that per the ruling on our motion last Friday, we will commence our inspection at the mill at 9:00 a.m. tomorrow morning." (As of June 28, the trial remained scheduled for July 12.) Franklin responded that the trial court had not specified a date for the inspection as a part of his minute order.

On June 29, Franklin sent a letter to Loeffler advising that he had received a copy of the minute order and that it did not provide any date for inspection, "nor does it resolve the questions my clients have." Franklin goes on: "To the extent that [the trial court] ordered Plaintiffs to have a "visual inspection, . . . [Manzetti] will comply." To the extent the trial court ordered [Manzetti] to permit the additional related activity, i.e., photos, filming, videotaping not specified in "your May 13, 1993 [Demand]," [Manzetti] believes the court may have abused its discretion and "we will file a petition for appropriate writ to seek review of such an order."[6]

On June 30, Loeffler filed an ex parte application for an order shortening time for a hearing of a motion. The motion, based on Manzetti's refusal to comply with the June 25 order, was set.for hearing on July 8 and requested termination of the case or in the alternative, a stay of all further proceedings and continuing trial until 30 days after Manzetti complied with the June 25 order. The motion also requested permission to reopen discovery to take Emil E. "Chuck" Manzetti's deposition to inquire about changes to the property and equipment between the time Fitzgerald made his demand for inspection and the time the inspection actually takes place.

On June 30, Manzetti filed his first petition for writ of mandate which we summarily denied on July 1. The petition is substantially identical to the papers filed in opposition to the motion to compel.

[5]Loeffler's declaration refers to a telephone conversation between counsel in which Franklin states a new objection based on trade secrets. Loeffler offered to enter into a stipulation for a protective order. Franklin did not reply to this proposal even though the discovery cutoff date was rapidly approaching and Loeffler was trying to resolve the issue quickly and informally.

[6]Fitzgerald's moving papers refer to a telephone conversation between counsel during which Loeffler explained that the trial court's minute order implicitly adopted the date for the inspection referenced in the moving papers and granted the specific request included in the motion.

On July 6, Franklin filed Manzetti's response to Fitzgerald's sanctions motion. He contended he and his client could hardly be blamed for not permitting Fitzgerald to conduct more than a visual inspection since the trial court had ruled succinctly: "Motion granted." Franklin's basic contention was: "Manzetti should not be compelled to guess about what the Court has ordered or intended that Manzetti permit."

On July 8, the trial court denied the motion to sanction Manzetti by terminating the action and, instead, ordered Manzetti to permit the inspection of the property upon 72 hours' notice, including the right to visually inspect the property and the right to photograph and videotape. The court also ordered that the depositions of Emil E. "Chuck" Manzetti and George Wulf could be taken on 72 hours' notice.[7]

Fitzgerald gave notice of the July 8 ruling, with a copy of the signed order attached. Fitzgerald also gave a notice of an inspection to take place on Tuesday, July 20. On July 19 (the day before the noticed time for inspection), Franklin filed with this court a second petition for a writ of mandate and request for a temporary stay. On July 22, we denied the request for a stay and issued an order to show cause re sanctions. Franklin responded in writing and appeared and argued at the noticed hearing.

## DISCUSSION

█ We issued the order to show cause because the first petition and the second petition are substantially identical and both focused on a single discrete objection to a legitimate demand for the inspection of property which should have been disposed of informally and was clearly and correctly resolved twice by the trial court. It appeared to us that Manzetti's reliance on section 2031, subdivision (c)(4) was without merit and his motivation was to delay. After considering the written and oral arguments responding to our order to show cause, we have concluded that our initial analysis was correct. Manzetti and its counsel have engaged in a pattern of unwarranted procedural maneuvers to delay and prevent Fitzgerald from exercising a legitimate

---

[7]The order provides in relevant part: "(C) Plaintiffs shall permit the inspection of the property located at 1400 Long Beach Avenue, Los Angeles which is the subject of this action ('Property') by defendants and defendants' representatives and agents upon 72 hours notice by defendants' counsel given to plaintiffs' counsel by FAX, telephone, telephone answering machine, or writing; [¶] (D) Defendants' inspection shall include (in their discretion) visual examination of the Property—including of the equipment, materials, and processes (e.g., material handling, plating and waste treatment) conducted, in or on the Property—and defendants may (1) make still and motion photographs and/or videotapes of the Property including the equipment, materials, and processes conducted, in or on the Property, (2) make diagrams of, and/or measurements of, the Property including the equipment, materials, and processes conducted, in or on the Property."

discovery right, speciously contending that they could not discern the scope of the requested inspection. Manzetti's petition is frivolous. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [183 Cal.Rptr. 508, 646 P.2d 179].)

In deciding this matter, we necessarily reviewed and considered the entire record of this discovery dispute from the original demand for inspection to the filing of the second petition. Only in this way we are able to determine the merits of the second and pending petition and the motivation for filing it. In short, we are entitled to consider petitioners' prior conduct with respect to the discovery dispute to decide if sanctions are justified. (See *Gottlieb* v. *Superior Court* (1991) 232 Cal.App.3d 804, 814 [283 Cal.Rptr. 771].)

Manzetti and Franklin have persisted from the outset to derail Fitzgerald's right to inspect by feigning ignorance of what the inspection entailed, totally ignoring the title of the originating discovery document, "Demand for Entry to Inspect, and to Measure, Survey, Photograph etc.," and disregarding the June 4 "meet and confer" memorandum from opposing counsel stating that the request was for a visual inspection including photographing the property. Even if the original demand was deficient in its specificity of the "related activity," the "meet and confer" memorandum, the motion to compel, and the trial court's order of July 25 completely clarified any doubt about what Fitzgerald wanted and would be permitted to do.

The first petition asserts that the "June 25 [order] should specify the related activity Petitioners are to permit, and the date by which they are to permit it." The record reveals that Franklin was present when the motion to compel was heard and argued. The court's order referred to the motion to compel heard on that date and by its terms provided the specificity Franklin contended was absent from the demand. The motion stated: "(1) Plaintiffs Emil 'Chuck' Manzetti and Alco Cad Nickel Plating Corporation shall permit defendants to enter the property at 1400 Long Beach Avenue, Los Angeles, California, on June 29, 1993 at 9:00 a.m. or as soon thereafter as possible for the purpose of conducting a visual inspection and photographing the property and facilities." It is incredible that Franklin did not understand that the court was granting the specific request of the motion before it. The contention that the court's minute order failed to inform Manzetti of the scope of the inspection is nothing other than a disingenuous attempt to stymie Fitzgerald's inspection.

Manzetti and Franklin attempt to justify their position by arguing that the July 8th proceeding did not afford them an opportunity to seek an appropriate protective order. This contention ignores the fact that this issue could have been raised in the trial court, but was not. Furthermore, Manzetti and

Franklin totally disregard opposing counsel's positive response to this concern by providing Franklin with a draft protective order as part of the "meet and confer" requirement. Manzetti and Franklin cannot reject a good faith effort to informally resolve a discovery dispute and then resurrect the issue before this court without putting their motivation in doubt.[8] If Manzetti and Franklin were truly interested in a protective order, an ex parte application to the trial court could have been made immediately after receiving formal notice of the order. Instead, Manzetti filed with this court another petition for a writ of mandate and a request for a stay even though we had previously denied a substantially identical petition seeking review of an order compelling an inspection of the real property which is the subject of the underlying lawsuit.[9]

By both the subjective and objective standards of *In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 649, petitioners and their counsel have frivolously applied for extraordinary relief. Given the precision of the July 8, 1993, order, there is no conceivable merit to the contention that Fitzgerald's demand lacked specificity as to the scope of the inspection. (*People* ex rel. *Dept. of Transportation* v. *Outdoor Media Group* (1993) 13 Cal.App.4th 1067, 1079-1080 [17 Cal.Rptr.2d 19].)

Manzetti's and Franklin's dogged reliance on section 2131, subdivision (c)(4) regarding the original demand is totally uncalled for when the extent of the inspection has been clarified by the "meet and confer process" and by two orders of the trial court. It is even less appropriate when the exact same issue has been presented to and rejected by this court in a prior petition. We acknowledge that the summary denial of the first petition does not constitute law of the case. (*Kowis* v. *Howard* (1992) 3 Cal.4th 888, 899 [12 Cal.Rptr.2d 728, 838 P.2d 250].) However, since we conclude that the first petition was utterly without merit and filed only to delay Fitzgerald's request for inspection, we properly consider it here to assess Manzetti's and Franklin's

---

[8]Loeffler initiated and complied with the "meet and confer" requirements of the Discovery Act. Franklin essentially refused to resolve his objection by that process. The objective of the "meet and confer" requirement is to resolve legitimate disputes and disagreements regarding the scope of discovery proceedings. Counsel are obligated to engage in this process in good faith and cannot reject reasonable proposals without suffering the consequences. In oral argument, Franklin contended, by analogy, that if he had objected to an interrogatory and the proponent of the interrogatory offered to clarify it as part of "meet and confer," he is not obligated to withdraw the objection. Assuming, as we do here, that the clarification eliminates the grounds for the objection, good faith participation in the required "meet and confer" compels the responding party to withdraw the objection. It is implicit that one of the purposes of section 2031, subdivision (*l*) is to informally expedite litigation without requiring the parties to refile discovery when negotiations can resolve any disputes over what is intended or required. (See *Sanctions Under the Civil Discovery Act of 1986* (1988) 15 Pepperdine L.Rev. 401.)

[9]On July 8th, the trial court extended the trial date to October 20, 1993, to allow the defendant to complete the discovery granted.

motivation and purpose for bringing the same issue to this court a second time.

In sum, the second petition is a reiteration of the first petition and Manzetti's opposition papers filed in the trial court. It simply repeats and relies on the same initial contention that the original demand fails to provide the specificity called for by section 2031, subdivision (a)(3). The second petition "raises issues that indisputably have no merit, i.e., it is [a petition] which any reasonable person would agree that the point is totally and completely without merit." (*Cohen* v. *General Motors Corp.* (1992) 2 Cal.App.4th 893, 895-896 [3 Cal.Rptr.2d 619].) It is the last stop (or gasp) in a circuitous effort to obtain delay and to deny a party the right to exercise legitimate discovery. Using the process of this court to achieve that result will not be tolerated. (*Coast Sav. & Loan Assn.* v. *Black* (1986) 187 Cal.App.3d 1494, 1500 [232 Cal.Rptr. 483].)

In the course of the oral argument, Franklin conceded that the opposition to Fitzgerald's demand for inspection was at least partially a reaction to the trial court's enforcement of the discovery cutoff with respect to Manzetti but not as to Fitzgerald. He explains that he did not believe it was fair for the court to allow Fitzgerald to have discovery after the original discovery cutoff date had expired and to deny it as to Manzetti. That explanation is hardly compelling and does not excuse his conduct or his client's conduct.

Franklin's declaration in opposition to the motion to compel states: Opposing counsel had proposed to " 'take still and motion photographs and/or videotapes of the premises including the equipment in it, and may make diagrams of, or measurements preparatory for diagrams of, the premises including tea [*sic*] equipment in it.' This declarant [Franklin], when he learned of this expanded 'related activity,' conveyed the same to plaintiffs [Manzetti] who immediately objected." From this, it may be inferred that Franklin may not be solely responsible for the decision to stonewall Fitzgerald's demand for inspection. However, he is constrained by his ethical obligation not to disclose communications with his client and has commendably accepted full responsibility for filing the second petition. Thus, he is compelled to bear the consequences for this sorry episode.

### DISPOSITION

The petition for writ of mandate is denied.

Counsel for petitioners, M. Edward Franklin, shall pay to the clerk of this court monetary sanctions in the amount of $1,500, within 10 days after this

order becomes final as to this court. (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 16-18 [244 Cal.Rptr. 581]; *Kurokawa* v. *Blum* (1988) 199 Cal.App.3d 976, 995 [245 Cal.Rptr. 463]; §§ 1109, 907; Cal. Rules of Court, rule 26(a); *Coast Sav. & Loan Assn.* v. *Black, supra*, 187 Cal.App.3d 1494; *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 135-137 [260 Cal.Rptr. 369].)

Woods (A. M.), P. J., and Epstein, J., concurred.