[No. D020373. Fourth Dist., Div. One. June 23, 1994.]

BRYAN MAURICE JONES, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Loren I. Mandel, Alternate Public Defender, Jacqueline C. Crowle, Deborah Carson and Jose H. Varela, Deputy Alternate Public Defenders, for Petitioner.

David Meyer, Assistant Public Defender (Los Angeles), John Hamilton Scott, Deputy Public Defender, John T. Philipsborn and Gary M. Mandinach as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Edward J. Mantyla, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**HUFFMAN, J.**—In this case, we are asked to determine the propriety of imposing sanctions on a petition for writ of mandate and request for stay. Sanctions are warranted where counsel omits critical facts intending to create a sense of emergency solely for delay. Because, however, we believe the omissions here were unintended, a product of time pressures combined with short-sighted advocacy, we refrain from imposing sanctions.

### FACTUAL AND PROCEDURAL BACKGROUND

This petition involves a death penalty case where Principal Attorney Deborah Carson (Carson), a deputy alternate public defender with significant experience in capital cases, had the flu when trial was set to start on January 21, 1994.

On January 10, Carson left work with a fever. On January 14, she informed the trial court she was ill, submitted a doctor's note advising her not to work from January 17 through 21 and stated she might need a continuance; but the court was firm that jury selection would begin on January 21. After some rest and a return to work, Carson had a relapse, saw her doctor on January 20, and obtained a letter from the doctor saying she had acute influenza and was disabled until January 30.

On January 21, Deputy Alternate Public Defender Jose H. Varela (Varela) moved to continue the trial to January 30 based on a declaration from Carson about her condition, the doctor's recommendation, and Varela's representation that he was incompetent to proceed alone because he had never tried a

death penalty case, was relatively new to this case and had a limited role as second chair. The trial court denied the motion.

That afternoon, the defense initiated this writ proceeding. In papers signed by Deputy Alternate Public Defender Jacqueline C. Crowle on behalf of Carson, Varela and herself, defense counsel represented "[j]ury selection in the case was scheduled to begin today, January 21, 1994, and is now underway" and requested an emergency stay adding: "Respondent Court is currently conducting trial in this case, in Department Fourteen of the San Diego Superior Court, and unless this Court issues its order staying the trial, the trial will proceed as scheduled. Counsel for Petitioner has moved to continue the trial date as of the date this petition was filed; said motion was denied and is the basis for this petition for Writ of Mandate." The petition advised us that the reporter had not yet transcribed Carson's January 14 motion for continuance, and Varela "requested a brief continuance to file a writ, which was denied . . . [and] an immediate transcription of the [January 21] motion hearing, which was also denied." However, transcripts were promised as soon as they were available.

We issued an immediate stay. It was not until we received the response from the district attorney that we learned what the petition failed to say— that the *only* proceeding on January 21 was hardship screening,[1] and all other aspects of jury selection and trial had been postponed until Carson was well enough to return. The response also pointed out that: summonses had been issued to 4,000 people so there would be 300 prospective jurors available for the hardship screening on January 21; Varela had conducted the hardship screening and trial on his own in a first degree murder case; and Alternate Public Defender Loren Mandel (Mandel) was in the courtroom on January 21, and the judge invited him or anyone else from his office to assist in the hardship screening.

We immediately vacated the stay and ordered defense counsel to show cause why sanctions should not be imposed against them.

---

[1]Hardship screening is the process of determining whether a prospective juror may be excused from service. As it was done on January 21 pursuant to procedures agreed upon by counsel and the court after a month of work, following a short orientation by the jury commissioner, the trial court stated the parties were looking for jurors who could serve for five months, explained hardship under the statute and gave the eighty prospective jurors who indicated they were able to sit on a five-month trial a date to return. The court then passed out the hardship excusal forms, recessed, read the answers into the record and questioned 40 prospective jurors who responded they would not be able to serve.

DISCUSSION

As a preliminary matter, we note the defense altered its position somewhat between the briefs and argument. In the return to the order to show cause, the deputy alternate public defenders argued:(1) they made no misrepresentations, (2) the issues were not frivolous, and (3) sanctions were not warranted. At argument, on the other hand, Alternate Public Defender Mandel took full responsibility for the petition and conceded in hindsight the omissions were significant. Because the difference in approach affects our conclusion, we will discuss the briefs separately from oral argument.[2] However, before turning to the main contentions, we address the bases for imposing monetary sanctions against a party or his attorney.

█ Sanctions may be imposed against parties or counsel under Code of Civil Procedure[3] section 907 "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay . . . ." Notwithstanding the reference to "appeal," the penalties under section 907 apply with equal force to petitions for writ of mandate. (*Lawrence* v. *Superior Court* (1988) 206 Cal.App.3d 611, 619 [253 Cal.Rptr. 748]; *Coast Sav. & Loan Assn.* v. *Black* (1986) 187 Cal.App.3d 1494, 1495, fn. 1 [232 Cal.Rptr. 483].) Because section 1109 makes section 907 applicable to proceedings in "this [t]itle,"[4] the phrase "this [t]itle" refers to title I, Writs of Review, Mandate, and Prohibition, and title I expressly covers writ petitions, section 1109 must be read to incorporate section 907 and authorize reviewing courts to impose penalties for petitions for writ of mandate which are frivolous or taken solely for delay.

Even if an appeal is neither frivolous nor filed solely for delay, we have independent authority under rule 26(a) of the California Rules of Court[5] to sanction a party who "has been guilty of any . . . unreasonable infraction of the rules . . . as the circumstances of the case and the discouragement of like conduct in the future may require."[6] Although rule 26 talks in terms of "rules governing appeals," we construe it to extend to writ petitions in light

---

[2]The arguments in the written briefs are addressed in parts I-III of the opinion and the oral argument is treated in Part IV.

[3]All statutory references are to the Code of Civil Procedure.

[4]Section 1109 provides: "Except as otherwise provided in this Title, the provisions of part two of this code [sections 307 through 1062.10] are applicable to and constitute the rules of practice in the proceedings mentioned in this title."

[5]All rule references are to the California Rules of Court unless otherwise specified.

[6]Rule 26(a) provides in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay or where any party has required in the typewritten or printed record on appeal the inclusion of any matter not reasonably material to the determination of the appeal, or has been guilty of any other unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending attorneys or parties such penalties, including the

of the express language of rule 53[7] applying the rules to "original proceedings" in the Courts of Appeal and directing that they "be liberally construed to secure the just and speedy determination of appeals, transfers and original proceedings."[8]

Finally, sanctions are properly imposed in a criminal writ proceeding. Sections 907 and 1109 govern all petitions for writ of mandate, whether the underlying action is civil or criminal. To the extent a petition is frivolous, filed solely for delay or unreasonably violates the rules on appeal, rule 26 also applies in criminal cases. (Rule 30.)[9] In *Gottlieb* v. *Superior Court* (1991) 232 Cal.App.3d 804 [283 Cal.Rptr. 771], the court relied on sections 907 and 1109 and rule 26 in imposing sanctions in connection with a petition in a criminal action. As *Gottlieb* explains, criminal defense attorneys have a duty to assert all theories having possible merit, but that obligation will not justify a petition for writ relief which is frivolous, ignores controlling authority and is filed "at such time and in such a manner" as to give rise to the conclusion it was done "with the intent to delay and harass the courts and the prosecution." (232 Cal.App.3d at p. 814.)

I

In the return to the order to show cause, defense counsel argue the petition was not misleading because every stated fact was true. They point to two sentences referring to the hardship inquiry[10] and go on to say: "[t]here is no allegation, or even inferential allegation, that other matters [besides hardship] were to occur on January 21; it [is not] misleading to state . . . 'trial'

withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

[7]Rule 53 provides in pertinent part: "These rules shall apply to appeals from superior courts and to original proceedings, motions, applications and petitions in the Supreme Court and Courts of Appeal. . . . The rules shall be liberally construed to secure the just and speedy determination of appeals, transfers, and original proceedings."

[8]While dictum in *Lawrence* v. *Superior Court, supra,* suggests rule 26 is inapplicable to filing a petition for writ of mandate solely for purposes of delay, the opinion fails to consider the effect of rule 53.

[9]Rule 30 provides: "The rules governing appeals from the superior court in civil cases shall be applicable to appeals from the superior court in criminal cases except where express provision is made to the contrary, or where the application of a particular rule would be clearly impracticable or inappropriate."

[10]Paragraph XII of the petition states: "Jury selection has now commenced and is currently underway. Respondent court indicated after the motion hearing that hardship qualification of the jury would proceed in Ms. Carson's absence. Petitioner objected to continuing in the absence of counsel."

Page 10 of the points and authorities provides: "The substantive jury selection process currently underway, however, where counsel and the defendant are introduced and hardship inquiry is conducted, deprives petitioner of his right to a fair trial and his right to competent counsel."

had commenced . . . [because] [t]here is no California authority that hardship voir dire is a separate proceeding from trial"; and although Varela had tried a first degree murder case, the trial did not last long and there was no hardship questionnaire or separate proceeding.

Two references to the hardship screening do not make this petition accurate—not where the references are oblique and buried in the petition and the rest of the papers give the distinct impression that an inexperienced lawyer was selecting a jury and trying a death penalty case. That impression begins on page 1 which summarizes the issue presented as "[w]hether the trial court on a capital murder case abused its discretion in denying a ten-day continuance of the jury trial where lead counsel is unavailable due to acute influenza, and in proceeding with jury selection in the absence of lead counsel." The papers repeat no less than 17 times that jury selection and trial are underway, and pray for an emergency stay stating, without it, "the trial will proceed as scheduled." Most important, the petition does not say: the trial court assured counsel on the 14th and again on the 21st that nothing but hardship would be heard on January 21, and everything else would await Carson's return; or Varela had handled the hardship inquiry and trial on his own in a first degree murder case.

From our perspective, a self-professed incompetent lawyer was picking jurors and trying a capital case while the principal attorney was out sick for at least 10 days.[11] Without disclosure of the omitted facts, inclusion of any reporter's transcripts[12] or resort to a crystal ball, we had no way of divining the real issue—whether the court properly exercised its discretion in finding Varela competent to handle the hardship screening, particularly where he had done it in the past on his own and the alternate public defender was invited to assist.

When transcripts are not available, rule 56 requires that counsel include along with the petition a declaration "fairly summarizing the proceedings . . . and the basis of the trial court's decision . . . ." (Rule 56(c)(4)(ii).) As an officer of the court and member of the bar, the lawyer is obligated to use

---

[11]Even acknowledging the hidden references to hardship screening, without being informed that nothing except screening would occur until lead counsel returned, the reader assumes the hardship excusal process will be over quickly and the second chair may be conducting voir dire or perhaps calling his first witness by the time the 10 days run.

[12]Defense counsel lodged the transcripts on January 24.

only such means as are consistent with truth: he may not seek to mislead a judge by artifice or suppress evidence he has a legal obligation to reveal. (Rules Prof. Conduct, rules 5-220, 5-200(A), (B).) In the final analysis, we cannot accept the notion that a selective recitation of facts satisfies the rules: half the truth in this case is just as misleading as a complete fabrication.

II

In the return to the order to show cause, defense counsel also argue the issues in the petition were not frivolous because: (1) hardship excusal is a critical stage of trial; (2) preserving the error on appeal requires a specific objection by counsel; (3) to properly object, counsel must be acutely aware of how to make a record, be sensitive to general demographics of the jury pool and be comfortable making decisions on constitutional challenges; and (4) Varela was candid enough to admit he was not competent to do this. They add that, by attending the screening, Carson could familiarize herself with prospective jurors in subtle ways and use the information to select a jury. Given these considerations and the heightened scrutiny applied in capital cases, the defense maintains the petition presented a serious legal issue—whether conducting the hardship screening in the absence of lead counsel is an error of constitutional proportions.

The problem is that none of these points were mentioned, let alone briefed, in the underlying writ petition. ■ Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived. (*In re Marriage of Laursen & Fogarty* (1988) 197 Cal.App.3d 1082, 1084, fn. 1 [243 Cal.Rptr. 398]; *Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1993) ch. 9.21, p. 9-5.)

Had defense counsel intended to put before us the issue of whether the principal attorney was required to attend hardship screening, it was incumbent on them to say so and brief it in the petition filed January 21. They did not. They waived the issue when there should have been sufficient time to research and draft the petition considering the court refused to continue the screening and decided as a factual matter Varela was competent to hear it on January 14. The timing and manner of filing the petition suggest it was filed for delay.[13]

---

[13]Even if the hardship arguments had been preserved, we would be likely to reject them on the merits. First, the statute and relevant local rules make it appear hardship screening is an administrative function of the jury commissioner and/or presiding department as opposed to

## III

Finally, in the return to the order to show cause, defense counsel protest sanctions are inappropriate because a request to continue the trial for 10 days is "simply not delay for delay's sake," they provided a complete record after receiving the transcripts, and they should not be penalized for making a good faith decision to pursue legitimate constitutional issues by way of writ rather than risk a claim of ineffective assistance of counsel on appeal.

The defense misses the point. As the People note, reference to a 10-day delay ignores that it would take another 6 weeks to issue the 4,000 summonses necessary to get a sufficient number of prospective jurors reporting for duty. Nor is a full record of any assistance where as here it is not provided until after we grant a stay.

Getting to the crux of the problem, we turn our attention to the nature of writ proceedings. A petition for writ of mandate asks for extraordinary relief: it is outside normal channels of appellate review where issues are examined with slow deliberation on a full record after the trial is over when the transcripts are cold. Writ proceedings are, by contrast, dynamic. We are asked to intervene and correct an error immediately while the trial court is still exercising jurisdiction, the record is developing and emotions are running high, often when reporters transcripts are not ready and additional facts may be necessary.

This forces us to depend on the representations of counsel. Reliance on counsel is not a problem on routine writ petitions—even when the record is not complete—because we are required to give the real party notice and opportunity to respond before we issue a writ in the first instance (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893]), and the response in most cases is quick to point out any distortions.

A writ petition coupled with a request for immediate stay is, however, somewhat different. Our power to stay is in a sense more awesome than our power to grant extraordinary relief because we can stay proceedings immediately without getting a response; the result is, in some instances, the stay

being part of the substantive jury selection process. (§ 218; Super. Ct. San Diego County Rules, Div. VIII, § 4.1, subd. (f).) Second, it is difficult to accept the premise that Varela was not competent to handle the screening when he had done so in the past. Third, we fail to see why the screening "requires" lead counsel when it could be easily accomplished with the assistance of the alternate public defender or other experienced attorney, and we further find the argument that Carson may lose subtle insights which might be useful later in jury selection too speculative for consideration.

operates as a de facto grant of relief. Nevertheless, the stay is a necessary adjunct to our jurisdiction to entertain rulings in cases in progress and grant swift relief to parties who are irreparably injured and have no other adequate remedy: it allows us to bring a serious problem to a halt until we can get to the bottom of things.

Abuse of that power has consequences more insidious than on appeal. In addition to the waste of precious time and resources by the parties and the appellate court that we see on a frivolous appeal, with writs there is an effect down the line. As noted by the trial court, a halt of proceedings puts a strain on superior court in terms of "the incredible effort [of issuing another 4,000 summonses] to get 300 people in here." There is also a ripple effect in the community when 300 people leave their jobs or homes to report for jury duty, and corresponding loss of confidence in the judicial system when 300 people are sent away with nothing accomplished.

Equally important is the damage to future petitioners: when this court loses faith in the credibility of counsel, it becomes hesitant to issue a stay requested by such counsel even though a petition, on its face, may appear to urgently require one.

Society cannot afford such a toll. Sanctions for abuse of the emergency writ process are clearly justified.

## IV

■ Finally, as mentioned earlier in the discussion, Alternate Public Defender Mandel appeared before us at oral argument and acknowledged full responsibility for the petition which he stated he had read and approved with knowledge of all the facts. He conceded in retrospect that: the petition was unclear; the failure to inform this court that only the hardship screening was taking place in Carson's absence was a significant omission; and the information was pertinent and should have been included in the petition.

The alternate public defender explained, however, that he was primarily concerned with the constitutional problem of proceeding with hardship in the absence of lead counsel, he had a duty to his client to get the petition on file, the petition was put together quickly and there are times, particularly in emergency situations, when counsel will simply err.

Although there is no excuse for attorneys of the caliber of the alternate public defender and his staff to omit pertinent facts, we do not believe they filed the petition solely for the purpose of delay. In reaching this conclusion, we focus on the subjective good faith expressed by the alternate public defender. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650 [183 Cal.Rptr. 508, 646 P.2d 179].) We are also persuaded there was an insufficient motive for delay if only because, as seasoned appellate specialists, defense counsel would realize it is foolish to expect an advantage from a Friday afternoon stay when the People could easily have had an objection to us first thing Monday morning. As such, we believe the omission was a mistake, the result of overzealous advocacy, a self-absorbed view of the facts and the constraints of time. Under these circumstances, we will not impose sanctions.

The petition is denied. Sanctions are also denied.

Benke, Acting P. J., and Froehlich, J., concurred.