Filed 4/19/23  Torres v. Dixon CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

FERNANDO TORRES et al.,

    Plaintiffs and Respondents,

v.

MARTHA DIXON,

    Defendant and Appellant.

E077374

(Super.Ct.No. PSC1804639)

OPINION

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.  Affirmed.

Martha Dixon, in pro. per., for Defendant and Appellant.

No appearance for Plaintiffs and Respondents.

This appeal arises out of a lease-to-own real estate transaction that was never completed.  Following a bench trial, the court found that the $83,000 the tenants had paid to the landlord should have been returned to them after the transaction fell through.  The landlord appeals, contending that the money was nonrefundable.  We affirm.

1

BACKGROUND

We take our facts from the trial court's statement of decision. Plaintiffs and respondents George Torres and Fernando Torres alleged that defendant and appellant Martha Dixon and others agreed to lease them a house in Indian Wells with the option of purchasing the home. The Torreses also alleged that they made a down payment on the home, agreeing to purchase it with a carry-back loan, but Dixon nevertheless sold the home to another buyer. The Torreses filed suit against Dixon and others, alleging several causes of action, including one for conversion.[1]

The parties entered into a "Residential Lease & Purchase Option Agreement" ("lease agreement"), paragraph A.7 of which reads as follows (bolding omitted):

Purchase Installment Option during Lease Period.

Purchase Price is $439,995.00.

20% down.

4% Interest.

$2500 monthly payment to include: PITI and HOA included.

Owner will give Tenants the option to purchase property during the lease period at

---

[1] Only the cause of action for conversion is at issue here, as the trial court addressed only that cause of action in its statement of decision, and there is no indication that the trial court was asked to address others. The complaint is not part of our record.

Separately, although the register of actions indicates that other defendants were named—including Dixon's son, against whom judgment was entered along with Dixon— only Dixon is a party to this appeal. Dixon asserted in trial court that she is a property manager for the house on behalf of her son.

which point the lease transfers to Option Installment Purchase Contract.

Owner will offer Tenants a 5 year Installment Purchase Option Contract where the Tenants can make payments to completely pay off the Home Purchase Price during that time period. The Option Contract can be renewed for another term of 5 years at the end of the first 5 year Term if Tenants need more time to pay off the remaining balance.

The Torreses attempted to exercise the option by paying $83,000 in cash to Dixon shortly after or at the same time they entered into the lease.[2] However, once it was clear that the sale was not going to be completed, the Torreses requested that Dixon return the money. Dixon did not do so.

The trial court found that there was no agreement that would allow Dixon to retain the money if the sale was not completed. It also noted that the Torreses were not seeking specific performance of the contract. It accordingly found in the Torreses' favor on their cause of action for conversion and awarded prejudgment interest (see Civ. Code, § 3287).

DISCUSSION

Bedrock principles of appellate review guide our analysis. A "trial court judgment is ordinarily presumed to be correct[,] and the burden is on an appellant to demonstrate,

---

[2] 20% of the home's stated purchase price is a dollar short of $88,000. The Torreses appear to have paid $88,000 (or approximately that) pursuant to paragraph A.7, and the parties appear to have agreed to credit $5,000 toward the security deposit under the lease, which the trial court determined Dixon was entitled to keep.

on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) A corollary to this rule is that an appellant "'has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Ibid.*)

Dixon's central contention on appeal is that the trial court erred in finding in the Torreses' favor on their conversion cause of action. However, Dixon has not pointed us to any evidence or legal authority that would allow us to conclude that the parties had agreed that the $83,000 was nonrefundable.

"'"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages . . . ."'" (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.) "'"Conversion is a strict liability tort."'" (*Ibid.*)

By itself, the lease agreement does not demonstrate error. Paragraph A.7 of the agreement, as stated above, does not indicate that the "20% down" was merely the option premium (i.e., the price to be paid for the right to exercise the option). Additionally, nothing in the lease agreement—including the use of the word "option" in paragraph A.7 or even the title of the lease agreement itself—suggests to us that construing the payment as nonrefundable is the best way to interpret the agreement. If anything, the high price of the purported option premium suggests that it was nothing of the sort. (See *Scarbery v.*

4

*Bill Patch Land & Water Co.* (1960) 184 Cal.App.2d 87, 102 ["Ordinarily, in a true option, the consideration given for the option is a relatively small fraction of the total purchase price"].) The trial court construed paragraph A.7 to mean that the Torreses simply had to pay the money to exercise the option, meaning that paying the money would trigger Dixon's obligation to sell the home to them. We agree with that interpretation.

Other than the lease agreement, the main evidentiary support for Dixon's argument here is a one-page document titled "Land Installment Contract Terms," that, along with the lease agreement, constituted Exhibit 103 at trial.

The Land Installment Contract Terms states that 20% of the home purchase price would be required to obtain the option to purchase, and that such an option premium would be nonrefundable. It reads in part: "20% in Option funds required for the option to purchase the property within a year, prior to the end of the tenant's lease term. [¶] No Refunds of the Option funds if tenants fail to perform on the purchase terms prior to the end of the lease term agreed upon. Option funds only guarantee that the buyer has the right to exercise their option to buy . . . ."

However, this document cannot establish error. For one, the Land Installment Contract Terms does not appear to be part of the lease agreement itself, but rather a separate document. It bears a separate title, and it reads more like an advertisement than an enforceable agreement ("Mortgage Payments as Low as $2500.00 a month, with

5

Interest starting as low as 4% depending on credit, loan application verification, and financial references").

For another, though both documents were made a single trial exhibit, there is nothing to suggest that the parties intended for the lease agreement to include the Land Installment Contract Terms's provisions (to the extent the document can be construed to have enforceable provisions). For instance, the lease agreement contains a clause stating that "[t]he following Attachment(s), when signed by Landlord and Tenant, shall become a part of this lease with the full force and effect of the fully executed lease," but the Land Installment Contract Terms is not listed as such an attachment. The fact that the parties made both the Land Installment Contract Terms and the lease agreement a single trial exhibit does not alone have any evidentiary value, such as establishing that the former was incorporated into the latter.[3]

The Land Installment Contract Terms is thus a separate document from the lease agreement, so there would need to be evidence that the Torreses had agreed to its statement that payment of 20% in "[o]ption funds" would be nonrefundable. In the statement of decision, the trial court concluded that it was "not clear" whether the

---

[3] Paragraph A.7 of the lease agreement refers to other contracts, such as an "Option Installment Purchase Contract" or "Installment Purchase Option Contract," but Dixon has not pointed us to any such contracts in the record, assuming such contracts were agreed to. It would not make much sense for these to refer to the Land Installment Contract Terms, both because the titles are not similar and because, by stating that "[t]he buyer must sign the option and purchase contracts at the offices of Roemer and Harnick, in Indian Wells, California," the Land Installment Contract Terms implies that some other document would be the option agreement.

6

Torreses ever received this document at all, and Dixon cites nothing in the record tending to show that the Torreses did in fact receive the document. The trial court characterized the Land Installment Contract Terms as a separate "flyer" that the Torreses might not have ever seen, and, at bottom, we see no reason to disagree.

Apart from the Land Installment Contract Terms and the lease agreement, Dixon has not cited to any substantial evidence suggesting that the Torreses had ever agreed that the $83,000 was nonrefundable.[4] In fact, several of her statements that the amount was nonrefundable cite to no evidence at all. We therefore conclude that no such evidence exists. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; *Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 527, fn. 3 ["We are not required to scour the record in search of support for a party's factual statements and may disregard such unsupported statements"].) In all, on this record, Dixon has not shown error on the conversion cause of action.

---

[4] Dixon at one point relies on a liquidated damages clause from a purchase agreement for the home, but the agreement is not signed by Dixon or anyone else purporting to be the home's seller. It appears to be merely an offer that the Torreses made on the home. At another point, Dixon relies on provisions from the lease agreement governing the security deposit and legal fees incurred when the landlord files suit, but those provisions are inapplicable here.

Dixon next contends that the trial court's award of prejudgment interest was in error. We disagree.

Under Civil Code section 3287, which governs prejudgment interest, a trial court "must award prejudgment interest from the first day there exists both a breach and a liquidated claim." (*Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 293.) In its statement of decision, the trial court determined that the "first day" was July 1, 2018. By then, "it was clear to all parties that the sale would not occur because, among other things, [the Torreses] had stopped making rent payments, were served with a notice to pay rent or quit, and stopped exchanging draft sale contracts with Dixon."

Dixon contends that prejudgment interest should run not from July 1, 2018, but instead from December 2020, as that is when the Torreses purportedly vacated the property. However, Dixon cites no legal authority for the proposition that such a date is the proper start date under these circumstances, nor does she cite any legal authority (other than Code of Civil Procedure section 3287) for her argument at all. Moreover, the factual support Dixon relies on in claiming that the Torreses vacated the home in December 2020—a register of actions for a separate unlawful detainer action—neither lists Dixon as a party nor the address of the property at issue in that action. It accordingly does little to establish what Dixon relies on it for, even setting any problems regarding judicial notice aside for the sake of argument. (Cf. *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 ["The court may in its

discretion take judicial notice of any court record in the United States. . . . However, while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files"].)  We accordingly find no error in the prejudgment interest award.

Dixon's remaining claims of error do not merit extended discussion.  She contends that a document she characterizes as a "cross-complaint" was erroneously dismissed, and she contends that her son was erroneously found in default.  Neither contention is supported by argument, and we therefore deem them waived.  (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own:  if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)  We note that the trial court stated that "[n]one of the documents [Dixon] filed purporting to be a 'counter suit'" comply with applicable rules, so treating them as cross-complaints would deny the Torreses due process, and Dixon has not shown us why such a conclusion would be in error.  Moreover, contrary to what Dixon claims, the trial court's statement of decision did not find her son to be in default; rather, it found her and her son jointly and severally liable for conversion.[5]

---

[5]  At oral argument, Dixon raised unpaid rent that the Torreses might have owed. That matter is not before us, as this appeal is only from the trial court's ruling following the bench trial on the Torres' conversion cause of action.

DISPOSITION

The judgment is affirmed.  The parties shall each bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL                    
                                                    J.


We concur:

RAMIREZ                  
                              P. J.
SLOUGH                  
                              J.

10