Filed 7/22/24  Chodosh v. Saunders CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FLOYD CHODOSH et al., | |
| Plaintiffs and Appellants, | G062591 |
| v. | (Super. Ct. No. 30-2022-01272270) |
| JOHN SAUNDERS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from orders of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.  Petition for writ of *coram vobis*, motion for discovery and an evidentiary hearing, and motion for taking of new evidence.  Denied.

Law Office of Patrick J. Evans and Patrick J. Evans for Plaintiffs and Appellants.

Callahan & Blaine, Peter S. Bauman and James M. Sabovich for Defendants and Respondents John Saunders, Robert Coldren, Diana Mantelli, George Fiori, Lisa Salisbury, Edward Susolik, Palm Beach Park

Association, Pacific Current Partners LLC, ICC 35902 LLC, and 3187 Redhill LLC.

Thomas Law Firm, Allen L. Thomas and Sivi G. Pederson for Defendant and Respondent Allen L. Thomas.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Larissa G. Nefulda and Daniel R. Velladao for Defendant and Respondent Cary Wood.

Fidelity National Law Group and Kevin R. Broersma for Defendant and Respondent Fidelity National Title Company.

\*          \*          \*

This case is the next iteration of nearly a decade and a half of litigation between the parties stemming from the sale of a mobilehome park property on which plaintiffs used to reside. Frustrated and unhappy with certain judicial decisions made relatively early on, plaintiffs have spent roughly eight years trying to right the wrongs which they claim resulted from fraudulent and conspiratorial conduct of defendants, judicial officers, private mediators, elected officials, and others. Having failed to obtain their desired relief from a judicial oversight body, government agencies and officials, state courts, and federal courts, plaintiffs filed the instant action using the same attorney who has represented them throughout. Relying on the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.; RICO), as well as fraud and unjust enrichment theories, plaintiffs seek monetary damages and declaratory relief reversing the impacts of what they term a "judge fix" and "judge crime."

On appeal, plaintiffs contend the trial court erred in dismissing the complaint after sustaining a demurrer without leave to amend on statute of limitations and collateral estoppel grounds. Their counsel, Patrick J. Evans, also claims the court unwarrantedly imposed almost $89,000 in

sanctions against him pursuant to Code of Civil Procedure section 128.7[1] for bringing a frivolous lawsuit. A thorough review of the record and judicially noticed matters reveals no error. The court properly found plaintiffs' RICO claims to be barred by the applicable statutes of limitations, including well-established accrual principles, and plaintiffs have failed to meet their burden of demonstrating error as to the other claims. Additionally, given the totality of the circumstances, the court did not abuse its discretion in finding this to be a rare and exceptional situation in which monetary sanctions against an attorney are warranted. Accordingly, we affirm the challenged orders.

FACTS AND PROCEDURAL BACKGROUND[2]

I.

THE MOBILEHOME PARK LITIGATION

An understanding of the case before us requires an understanding of a nearly 15-year litigation history between plaintiffs and various parties concerning a San Clemente mobilehome park in which

---

[1] All further statutory refences are to the Code of Civil Procedure unless other wise stated.

[2] In conjunction with the challenged rulings, the trial court took judicial notice of a wide variety of documents, including without limitation pleadings, briefs, and judicial decisions filed in other trial court and appellate court level proceedings in which plaintiffs have been involved. We take judicial notice of the existence of those same matters, not the truth of the statements made therein. (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).) Given the procedural posture of this case, the facts and procedural background we recite are drawn from, inter alia, those judicially noticed matters, the allegations in plaintiffs' complaint, and an unpublished opinion from this court. (*Chodosh v. Palm Beach Park Assn.* (Dec. 17, 2018, G053798) [nonpub. opn.].)

3

plaintiffs used to reside, Palm Beach Mobilehome Park (the mobilehome park).

In 2007, the homeowners association for the mobilehome park, the Palm Beach Park Association (the Association), acted on a right of first refusal to purchase the mobilehome park property. A lender loaned most of the purchase money to the Association. In turn, the Association's directors voted to assess each of its 126 members, on a per capita basis, the cost of buying the park. It amounted to $200,000 per member. Those unable to pay the money immediately were allowed to borrow the money from the Association pursuant to a promissory note. If a member were to default on monthly note payments, the entire remaining balance would become due and payable. The note payments later became a condition of each member's lease, making nonpayment a material breach of the lease.

Unable to continue making payments, nine of the Association's residents (the Chodosh plaintiffs) sued the Association in late 2010. (*Chodosh v. Palm Beach Park Assn.*, Super. Ct. Orange County, 2010, No. 30-2010-00423544.) Two years later, the Association filed a verified cross-complaint seeking unpaid rent and ejectment. We refer to these two actions and other cases with which they were consolidated in the trial court, collectively, as the Original Action.

The Original Action was tried in four phases between 2013 and 2015. Now retired Judge Nancy Wieben Stock presided over the first phase. Judge Robert J. Moss heard the remaining phases after Judge Stock's retirement. Among the determinations made were that the Chodosh plaintiffs were not obligated to pay the $200,000 per capita assessment styled as a loan from the Association, they were each entitled to restitution for any sums already paid toward that amount, they had no real property interest in

4

any portion of the mobilehome park property, they owed the Association for unpaid rent, and the Association was entitled to writs of possession to remove plaintiffs from their mobilehome park spaces.

II.

THE ORIGIN OF PLAINTIFFS' CONSPIRACY ACCUSATIONS

During the early stages of the Original Action, the Chodosh plaintiffs' counsel, Evans, began questioning the impartiality and integrity of judges and others involved in the matter. The accusations have perpetuated and explosively multiplied since that time.

It all started when the matter went to mediation in late 2013 before retired Justice John K. Trotter, a neutral at and cofounder of JAMS, Inc., a private provider of alternative dispute resolution (ADR) services. The mediation was unsuccessful. Evans claimed Justice Trotter said he would tell Judge Stock that the lack of settlement was the Chodosh plaintiffs' fault.

When the Original Action returned to court after the failed mediation, it was reassigned to Judge Moss due to Judge Stock's retirement. A few months later, in May 2014, the Chodosh plaintiffs sought to disqualify Judge Moss, claiming there was reason to believe Justice Trotter's supposed communications with Judge Stock about the failed settlement must have reached Judge Moss as well, and he would not be fair and impartial as a result. Judge Moss struck the statement of disqualification, leading the Chodosh plaintiffs to seek a writ of mandate from this court disqualifying him. The writ petition was summarily denied, with a concurrence indicating one justice would have issued an order to show cause as to why sanctions should not be imposed for the filing of a frivolous writ petition.

Around the same time, Evans filed suit against Justice Trotter and JAMS on behalf of many of the plaintiffs from the Original Action.

5

(*Chodosh v. Trotter*, Super. Ct. Orange County, 2014, No. 30-2014-00722371; JAMS Action.) The complaint alleged a variety of contract and tort based claims primarily grounded in Justice Trotter's purported threat to tell Judge Stock that the Chodosh plaintiffs prevented settlement, as well as a purported failure to disclose that, at the time the mediation events occurred, Judge Stock was in discussions with JAMS about joining JAMS after retiring from the bench. Justice Trotter and JAMS successfully moved to strike the complaint pursuant to section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute, and recover related attorney fees. That disposition was affirmed on appeal by the Fourth District Court of Appeal, Division One. (*Chodosh v. Trotter* (Sept. 13, 2017, D070952, D070953) [nonpub. opn.].)

In November 2015, prior to the last phase of the Original Action, Evans filed a lawsuit on behalf of another resident of the mobilehome park seeking to stop the Association's sale of the property to a third party (*Haugen v. Palm Beach Park Assn.*, Super. Ct. Orange County, 2015, No. 30-2015-00819837; Haugen Action.) Evans promptly sought to disqualify Judge Moss from the Haugen Action pursuant to section 170.6. A minute order issued a few days later by a then supervising judge, Judge Charles Margines, reassigned the case to another judge, Judge Gail A. Andler.

A few weeks thereafter, in late December 2015, following the filing of an objection to the section 170.6 challenge and an opposition to the objection, Judge Moss ordered the statement of disqualification stricken and the case reassigned back to himself. Days later, he denied an ex parte temporary restraining order (TRO) application which sought to stay the impending sale of the mobilehome park property.

6

Between March and April 2016, Evans sent letters to the attorneys representing the defendants in the Haugen Action and filed complaints against Judge Moss with both the Commission on Judicial Performance (CJP) and Judge Margines, in his capacity as then presiding judge of the Orange County Superior Court.[3] The letters to counsel accused the Haugen Action defendants and their counsel of being part of a criminal conspiracy to obstruct justice so they could financially benefit from the sale of the mobilehome park property to the residents' detriment. Evans believed someone acting on behalf of the defendants "improperly contacted Judge Moss ex parte for the specific purpose of requesting that Judge Moss take over [the case] by reinstating himself as the judge on the case." (Italics omitted.) He further claimed Judge Moss was on vacation when he (1) received the ex parte contact, (2) called his clerk to have the case reassigned back to him, and (3) continued the ex parte TRO hearing to a few days later. According to Evans, the sale of the mobilehome park property closed four hours after Judge Moss took these actions. Counsel for the Haugen Action defendants responded to Evans in writing denying all the accusations. The complaint filed with Judge Margines recited the same factual circumstances, and it asserted Judge Moss acted unlawfully and committed willful judicial misconduct.

The CJP requested further information from Evans, which he provided, and it ultimately notified him it "found no basis for action against [Judge Moss] or determined not to proceed further [with] the matter."

---

[3] The letter sent to CJP indicates the basis for the complaint was presented in documents enclosed therewith, contained in four three-ring binders. Those documents are not included in the appellate record.

7

In the meantime, Evans sought to disqualify Judge Moss from all the mobilehome park related cases pending before him pursuant to section 170.1. He claimed ex parte contacts with Judge Moss led the judge to illegally reassume jurisdiction over the Haugen Action so he could enforce illegal contracts. Following receipt of an objection, Judge Moss struck the statement of disqualification as untimely and lacking legal grounds for disqualification. Thereafter, Evans unsuccessfully sought a writ of mandate ordering the disqualification of Judge Moss. The 68-page writ petition asserted the purported ex parte communications, as well as the December 2015 unlawful "reassumption of jurisdiction," were the decisive events giving rise to the disqualification, the surrounding circumstances indicated actual bias on the part of Judge Moss, and additional facts demonstrated active non-disclosure and concealment of the truth by the court and the Association.

Early the following year, 2017, Evans turned to the California Attorney General's Office for relief. His seven-page letter detailed his clients' battle with the Association and Judge Moss' purported actions, and it asserted his clients' loss of their homes "was the direct result of willful, purposeful judicial misconduct and wrongdoing" by Judge Moss. The Attorney General's Office responded stating it could not assist and invited Evans to contact the local district attorney's office. It explained: "The Department of Justice is committed to upholding and enforcing state law, but it lacks the resources necessary to review all matters in which improper activities are alleged. Ordinarily, local law enforcement authorities have primary responsibility for investigating violations of law within their jurisdictions."

## FIRST APPEAL IN THE ORIGINAL ACTION

Seven of the nine plaintiffs in the Original Action (the Chodosh appellants) appealed from the judgment entered following the four-phase trial.

The introduction of the Chodosh appellants' opening brief began: "Illegal transactions and judicial wrongdoing render the judgment a nullity. The judgment is void as it purports to uphold and enforce illegal agreements. It is void as the product of judge misconduct, biased judicial officers' intentional and wrongful enforcement of illegal agreements and transactions against [a]ppellants in favor of their wrongdoer fiduciary homeowners' association."

And it ended: "The evidence and record proves that (i) Judge Moss intentionally intervened to aid the fiduciary fraudulent self-dealing Palm Beach Park sale; (ii) he and [a]ppellate justices ignored and allowed enforcement of [Association] illegal transactions; (iii) . . . the Orange County courts, confronted with such wrongdoing, did nothing and acted to uphold it. [¶] . . . [¶] More rudimentary, they transgressed Rule of Law No. 1 - that a judge follows the law. At Palm Beach Park, and in the Palm Beach Park litigation, there has been no Rule of Law."

In a December 2018 unpublished opinion, another panel of this court affirmed the Original Action judgment, in part, and reversed it, in part. (*Chodosh*, *supra*, G053798.)

Between addressing the Chodosh appellants' many contentions, the opinion "address[ed] [the opening brief's] leitmotif that judicial bias somehow rendered the entire judgment a 'nullity.'" It wholly rejected the allegations of illegality and judicial misconduct. Regarding the former, it

9

noted Judge Moss could not be faulted for a legally inaccurate ruling when it resulted from Evans' failure to bring the issue to his attention. As for the latter, the court found an absence of any evidence of possible bias or preconception. It explained: "We've been through this record and can only compliment Judge Moss for extreme judicial restraint. All Judge Moss did — besides hold his temper — was to rule against appellants on a number of occasions. It is well established that adverse rulings — even many erroneous adverse rulings — are no basis for a claim of judicial bias."

In a similar vein, the opinion addressed what it described as Evans' "pattern of inflammatory accusations against any number of judges who have ruled against him, including not only Judge Moss but the Presiding Justice of this Division[,]" and Evans' "practical[] invit[ation] . . . to hold him in contempt for accusing Judge Moss of fixing the result." It continued: "Even the fairest judge sometimes cannot make up for poor pleading or poor research by a litigant's counsel. [¶] We choose not to set contempt proceedings for Attorney Evans for the calumnies he has casually hurled at Judge Moss, nor for those directed at this court. We conclude he craves the attention of such a hearing more than he would suffer from its result. We choose to deny him that attention and write off his intemperance to an excess of zeal on behalf of vulnerable and elderly clients."

Separately, the opinion analyzed the Chodosh appellants' remaining arguments and found one ground for partial reversal on the issue of whether the Chodosh plaintiffs owed the Association for unpaid rent. Although it outlined the law and legal standards applicable to a proper evaluation, the unpaid rent determination ultimately required a remand to

10

the trial court for an evidentiary hearing and the making of relevant factual findings.[4]

## IV.

### FEDERAL AND OTHER ACTIONS

Between 2016 and mid-July 2022, when the instant case was filed, Evans filed and represented various combinations of the mobilehome park residents in several additional state and federal court actions. Those actions were grounded in allegations of a conspiracy or "fix" among judges and justices who had ruled adversely against Evans' clients in some manner, JAMS, CJP, state elected officials, the Association, various entities that did business with or were affiliated with the Association in conjunction with its handling of the mobilehome park property, and individuals who represented or acted on behalf of such entities. The purported aim of these individuals was to ignore and defy the law in order to validate illegal agreements and transactions, to deprive the complaining mobilehome park residents of due process, including an impartial judiciary, and for the judges and justices to secure positions at JAMS upon retirement. Each of these cases was disposed of early on, with the outcomes being against Evans' clients.

In 2017, a federal district court dismissed a federal civil rights action for lack of jurisdiction. (*Eicherly v. Moss* (C.D.Cal., Mar. 29, 2017, No. SACV 16-02233-CJC) 2017 WL 6021426.) It based its determination on the

---

[4] Following remand, the trial court held additional proceedings and entered an amended judgment. The Association appealed from the amended judgment and that appeal is separately pending in this court. (*Chodosh v. Palm Beach Park Assn.* (G062202, app. pending).)

*Rooker-Feldman*[5] doctrine, which bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* (2005) 544 U.S. 280, 284.) The Ninth Circuit Court of Appeals upheld that determination, but concluded the dismissal should have been without prejudice. (*Eicherly v. O'Leary* (9th Cir. 2018) 721 Fed.Appx. 625.)

In 2020, Evans brought claims on behalf of many of the same mobilehome park residents and against the same defendants as in this case, alleging violations of RICO, a RICO conspiracy, and unjust enrichment, all grounded in claims of "a wide-spread conspiracy between [the] [d]efendants and members of the state judiciary." (*Chodosh v. Saunders* (C.D. Cal., Nov. 5, 2020, SACV 20-01326-CJC-KES) 2020 U.S.Dist. Lexis 225001.) After denying a motion to disqualify the assigned federal judge based on prior rulings adverse to Evans' clients (*Chodosh v. Saunders* (C.D. Cal., Oct. 8, 2020, No. SACV 20-01326-CJC-KES) 2020 U.S.Dist. Lexis 225005), the federal district court dismissed the complaint for lack of jurisdiction. Relying again on the *Rooker-Feldman* doctrine, the court noted that the crux of the claims was no different than that asserted in the 2017 dismissed federal case despite being stylized as RICO based. (*Chodosh, supra*, 2020 U.S.Dist. Lexis 225001.) In doing so, it again rejected the notion that the narrow extrinsic fraud exception to the doctrine applied.

The Ninth Circuit affirmed the dismissal of the RICO action in 2021. (*Chodosh v. Saunders* (9th Cir., Dec. 16, 2021, No. 20-56252) 2021

---

[5] *D.C. Court of Appeals v. Feldman* (1983) 460 U.S. 462; *Rooker v. Fidelity Trust Co.* (1923) 263 U.S. 413.

U.S.App. LEXIS 37151.)  It explained:  "Appellants had the opportunity to present their claims in state court, and the basis of Appellants' asserted injury and RICO claim is not a wrongful act by the adverse party but rather the state court's purportedly 'wrongful[ ] adjudicat[ion]' that they were not entitled to damages.  [¶]  The district court thus properly dismissed Appellants' action for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine because it was in part a 'de facto appeal' of prior state-court decisions . . . ."  (*Ibid*.)  And in closing, it expressed concern about the repeated and protracted litigation conduct and warned Evans' clients:  "This litigation has dragged on unnecessarily for years and is now perilously close to frivolity.  [Citation.]  Appellants should consider themselves warned that any future filings asserting these meritless claims may result in the imposition of substantial monetary sanctions."  (*Ibid*.)

Finally, in mid-July 2022, the Third District Court of Appeal affirmed the sustaining of a demurrer without leave to amend in a case brought by Evans on behalf of Chodosh.  (*Chodosh v. Commission on Judicial Performance* (2022) 81 Cal.App.5th 248, 253-254.)  The underlying complaint filed against the CJP, the California Department of Justice, and the then-former California Attorney General, accused Judge Moss of committing judicial misconduct by "'fixing'" the mobilehome park related cases against the plaintiffs therein, and "allege[d] the [CJP] and Attorney General systematically fail to discharge their ostensible duties to protect the public from 'judge crime.'"  (*Id*. at p. 256, fn. omitted.)  The appellate court agreed with the trial court that the complaint failed to state a cause of action against any of the defendants.  (*Id*. at p. 254.)

13

THE PRESENT RICO ACTION

*A. The Claims and Allegations*

In late-July 2022, Evans filed the instant action on behalf of plaintiffs, which they admit, is nearly identical to the dismissed federal RICO action. The 157-page complaint, appended with nearly 300 pages of exhibits, ostensibly sets forth four causes of action: (1) violations of 18 U.S.C. section 1962(c); (2) violations of 18 U.S.C. section 1962(d); (3) set aside of the Original Action judgment due to fraud on the court; and (4) unjust enrichment.

The relevant players consist of plaintiffs, defendants, and non-defendant coconspirators. Plaintiffs are all former mobilehome park residents who were plaintiffs in the Original Action and in various of the other mobilehome park related cases. Defendants fall into four categories: the mobilehome park buyer defendants (John Saunders, Robert Coldren, ICC 35902 LLC, 3187 Redhill LLC, and Pacific Current Partners); the HOA related defendants (the Association, Diana Mantelli, and George Fiori); the title policy defendant (Fidelity National Title Company); and the attorney defendants (Lisa Salisbury, Allen Thomas, Cary Wood, and Edward Susolik). The non-defendant coconspirators consist of current and former judges, justices, ADR providers and neutrals, and state elected officials, agencies, and their representatives, each of whom is alleged to have had some involvement in something that touched on the underlying disputes between the mobilehome park residents and others, and/or the legal or ADR proceedings concerning the same.

The following allegations from the complaint convey the big picture story set forth by plaintiffs: "The [Association] [b]oard [p]resident,

14

[d]irectors and attorneys lured, misled, and betrayed the HOA seniors into voting to sell the [mobilehome] [p]ark to the [p]resident's undisclosed affiliates at an exceptionally low price"; "[p]laintiffs tried to stop the sale, but a judge 'fixed' the case, enabling the fraudulent sale and taking of seniors' homes and millions in real estate equity"; "[t]he wrongdoer judge concocted 'self-re-qualification' as the device to 'fix' the case so he could enable the fiduciary fraudulent sale that stole millions from the seniors"; "[t]he wrongdoer [d]efendants, by a judge they bribed to fix the sale, acquired the rare coastal parcel at millions of dollars less than its market value"; "[t]he racketeering enterprise injured [p]laintiffs by carrying out HOA taking of their homes without compensation"; "the ['fix'] judge was part of a racketeering judge crime enterprise . . . where judges and justices, retired judges and justices practicing as 'neutrals' . . . , alternative dispute resolution . . . vendor companies, attorneys and clients, the judge oversight disciplinary agency Commission on Judicial Performance . . . , and the California attorney general . . . act and conspire to enable judge 'fixes' to benefit favored clients and customers, attorneys, and themselves"; "[h]iding behind immunity and secrecy, with judges judging judges, they all disregard their oaths to law, ethics, and the people in order to give the green light to judge crime"; and "[t]he presiding judge, the appellate court, the judge commission, and the attorney general did and will do nothing about the judge 'fix.'"

Plaintiffs' requested relief includes both monetary and nonmonetary relief. On the monetary side, they request, inter alia, treble damages on their RICO claims, compensation for the value of their homes, and attorney fees and costs. On the nonmonetary side, they seek a declaration that the judgment in the Original Action was and is "void for

15

fraud on the court because [they] were deprived of an impartial court, such that [they] are entitled to a new trial before an impartial court where the judicial officers are not bribed and not subject to JAMS' influence."

*B. Trial Court Proceedings*

A group of defendants, referred to by the trial court and the parties as the Callahan defendants, demurred to the complaint and moved for monetary and nonmonetary sanctions against plaintiffs and Evans.[6] The demurrer asserted, inter alia, plaintiffs' claims are barred by the applicable statutes of limitations, res judicata, collateral estoppel, the litigation privilege (Civ. Code, § 47, subd. (b)), and the *Noerr-Pennington*[7] doctrine. The sanctions motion, brought pursuant to sections 128.5 and 128.7, subdivisions (c) and (d), asserted the complaint was frivolous, it was filed "to turn the machinery of justice against itself and to intimidate and harass the judiciary and [d]efendants," and sanctions were appropriate and necessary given the lengthy history of conduct by plaintiffs and Evans. Submitted in support of the sanctions request were a few litigation related documents; the moving defendants requested the court take judicial notice of them.

After receiving an opposition from plaintiffs, declarations, requests for judicial notice, and additional briefing, the court held a hearing. It ultimately confirmed its tentative decision to sustain the demurrer without leave to amend as its final decision. In a written order, the court explained

---

[6] Various groups of defendants also filed other motions. The trial court did not rule on most of those other motions due to its ruling on the Callahan defendants' demurrer, and none of the other motions are at issue or relevant to this appeal.

[7] *United Mine Workers v. Pennington* (1965) 381 U.S. 657; *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127.

16

its reasoning: (1) the two RICO causes of action were barred by a four-year statute of limitations which began to run no later than April 2016; (2) the set aside cause of action was barred by a three-year statute of limitations, a reasonable time filing limitation, and collateral estoppel; (3) the unjust enrichment claim was barred by a three-year statute of limitations; and (4) plaintiffs did not request leave to amend the complaint and the court could not envision how any of the identified defects could be remedied through amendment.

In light of the trial court's demurrer ruling, and without waiving the right to contest the court's determinations, the parties stipulated, in relevant part, to the following: that the court would sustain a demurrer without leave to amend as to all other defendants based on the same grounds set forth in its ruling concerning the Callahan defendants; that the complaint should be dismissed; and that plaintiffs and the Callahan defendants would be permitted to submit supplemental briefing on the pending sanctions motion. The court issued an order consistent with the stipulation.

Following issuance of a lengthy written tentative decision and a hearing at which all sides argued the sanctions matter, the trial court issued an order granting sanctions requested pursuant to section 128.7 and denying those requested pursuant to section 128.5.[8] With respect to the latter, the court found the moving defendants failed to provide any evidence of subjective bad faith by plaintiffs or Evans. Regarding the former, the court concluded: (1) the moving defendants complied with all procedural

---

[8] Because the Association was not listed as a party on the prefiling notice provided to plaintiffs in accordance with statutory requirements, the court found it was not among the moving parties to whom relief could be accorded.

17

requirements; (2) despite three prior judicial decisions rejecting various aspects of plaintiffs' conspiracy theory, they repackaged all those aspects together into a RICO action, which is sanctionable conduct; and (3) plaintiffs' responses to the sanctions motion were irrelevant or legally or factually unsupported.

In determining the appropriate sanctions, the court deemed the request for nonmonetary sanctions moot because of the demurrer ruling and concluded monetary sanctions were necessary to deter repetition of the concerning conduct. From its perspective, the single sale of a mobilehome park had resulted in a slew of state and federal court litigation through which Evans "'engaged in a pattern of inflammatory accusations against any number of judges who have ruled against him.'" And despite multiple appellate court warnings about the possibility of sanctions, Evans continued undeterred and filed what the court considered a frivolous RICO action in state court. Based on the entirety of the circumstances, the court ordered sanctions against Evans only, not against plaintiffs. Among other things, it noted plaintiffs are "'vulnerable and elderly,'" and though it was unclear how much control they had over litigation related decisions, some evidence gave the impression Evans controlled matters.

As for the amount, the court found reasonable the $88,855 requested by the moving defendants, consisting of that which they incurred in defending the action. Hourly billing rates ranged from $265 to $510. Clerical work and work concerning a separate dispositive motion filed by the Callahan defendants which was later withdrawn was not included.

Plaintiffs timely appealed.

DISCUSSION

Plaintiffs contend the trial court erred in finding their claims to be barred by the applicable statutes of limitations and collateral estoppel. Evans also argues the section 128.7 sanctions were unwarranted.[9] Pervading their briefing are continued accusations of "judge crime," a "fix," and the private ADR industry's undermining of judicial integrity. Focusing on the law, we find no error.

## I.

### PRELIMINARY MATTERS

Before turning to the substance of the appeal, we first address three requests filed by plaintiffs: a petition for a writ of *coram vobis*; a motion for discovery and an evidentiary hearing; and a motion to take new evidence pursuant to section 909.[10] As we explain, each is defective or inappropriate under the circumstances.

*A. Writ of Error* Coram Vobis

A writ of error *coram vobis* "direct[s] the trial court to reconsider its decision based on new evidence discovered after its decision that would have been grounds for granting reconsideration." (*In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295-1296.) It is "'a drastic remedy'" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 228), and its use in civil proceedings in California is rare (*Chaganti v. Superior Court* (2021) 73 Cal.App.5th 237,

[9] Although Evans is not listed as an appealing party on the notice of appeal, we construe the notice to include him because, inter alia, the sanctions were imposed against him only. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 888-890.)

[10] Plaintiffs' three requests are filed in a single 65-page pleading, accompanied by a 21-page declaration made by Evans and 200 pages of exhibits.

19

243). Among the requirements for its issuance are that proffered new evidence (1) "will either compel or make probable a different result in the trial court," (2) "was not presented to the trial court for reasons other than the fault or negligence of the petitioner," and (3) "was unknown to the petitioner at any time substantially earlier than filing the petition for the writ." (*In re Rachel M.,* at p. 1296.)

Included in the matters plaintiffs categorize as "new evidence" are the following: (1) in June 2022, Judge Moss retired and became a private neutral at Judicate West, another private ADR service provider; (2) three of the justices involved in decisions related to the Original Action and the Haugen Action have since retired and become neutrals at JAMS; (3) Callahan & Blaine has settled cases at Judicate West and one of the firm's attorneys previously worked at Judicate West; (4) Callahan & Blaine's retainer agreements with clients designate JAMS and Judicate West as ADR providers; and (5) various documents related to a lease involving a different mobilehome park owned by defendant Saunders designate JAMS and Judicate West as ADR providers. They contend this "new evidence" shows "'quid pro quo' bribery bargains made between and among [defendants], . . . JAMS, Judicate West, and the Orange County [j]udges and [j]ustices that decided this case and [plaintiffs'] underlying cases and appeals, including [the Original Action]." Evans separately contends defendants' concealment of this evidence requires reversal of the sanctions order.

Setting aside any procedural deficiencies, which we do not address, plaintiffs' petition is substantively problematic. The trial court sustained the demurrer on statute of limitations and collateral estoppel grounds. None of the purported facts proffered by plaintiffs would have any likelihood of changing the result of the demurrer in those regards. At best,

they are an attempt to enlarge and lend credence to the same conspiracy they have attempted to articulate all along. Further, most of what plaintiffs offer has long been public information; it is not new. And, contrary to plaintiffs' assertions, that defendants deny the existence of a conspiracy and any bribery or other nefarious conduct does not demonstrate concealment of the alleged new evidence.

*B. Motions for Discovery, Evidentiary Hearing, and Taking of New Evidence*

Equally misguided are plaintiffs' request for discovery and an evidentiary hearing, and the section 909 request for the taking of additional evidence. Citing California Rules of Court, rules 8.54 and 8.155, they ask we remand the case "for discovery to supplement the record with new evidence of judge and ADR company and attorney bribery 'quid pro quos.'" Alternatively, in reliance on section 909, they request we receive new evidence in the first instance. But, nowhere in the California Rules of Court is there a provision which speaks to the requested remand, and plaintiffs provide us with no other support for our authority to so act. In addition, discovery and the consideration of additional evidence, in the trial court or on appeal, is not warranted under the circumstances. This appeal concerns a demurrer, the disposition of which does not involve the consideration of facts or the making of factual findings. And, not only do plaintiffs fail to articulate any relevance to the challenged sanctions motion, but the applicable standard of review does not allow us to engage in fact finding. Finally, plaintiffs seek to use the additional evidence to allow the RICO action to move forward, an outcome for which section 909 is not to be used. (See *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 605.)

The petition for a writ of *coram vobis* and the two evidentiary related motions are denied.

21

## II.

### DEMURRER GENERAL PRINCIPLES AND STANDARD OF REVIEW

"'[I]n reviewing a trial court's order sustaining a demurrer without leave to amend[,] "[w]e independently review the ruling . . . and determine de novo whether the complaint alleges facts sufficient to state a cause of action. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken."'" (*Hagey v. Solar Service Experts, Inc.* (2023) 94 Cal.App.5th 1303, 1308.) That assumption of truth does not extend to contentions, deductions, or conclusions of law or fact. (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102.) In addition, although ""[w]e construe the pleading in a reasonable manner and read the allegations in context"" (*Hagey,* at p. 1308), "any allegations that are contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity." (*C.R.,* at p. 1102.)

When a demurrer is grounded in an affirmative defense, such as a statute of limitations, it is properly sustained if "'the complaint "has included allegations that *clearly* disclose some defense or bar to recovery."'" (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; see *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [statute of limitations defect clearly and affirmatively appearing on fact of complaint is grounds for general demurrer].) Stated differently, "'a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense.'" (*Stella,* at p. 191.)

22

III.

STATUTES OF LIMITATIONS

The trial court determined each of plaintiffs' claims is barred by the applicable statute of limitations. Except for the set aside claim, the parties generally agree about which statutes of limitations apply. Their biggest point of contention is the time at which the RICO cause of action accrued. Resolution of this issue is critical because "statutes of limitation do not begin to run until a cause of action accrues." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.)

*A. RICO*

RICO, founded on the concept of racketeering, "created four . . . criminal offenses involving the activities of organized criminal groups in relation to an enterprise. [Citation.] [It] also created a . . . civil cause of action for '[a]ny person injured in his business or property by reason of a violation' of those prohibitions." (*RJR Nabisco, Inc. v. European Community* (2016) 579 U.S. 325, 329 (*RJR Nabisco*).)

Relevant here are sections 1962(c) and 1962(d) of title 18 of the United States Code, the portions of the statute on which plaintiffs' claims are based. The former "makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity." (*RJR Nabisco, supra*, 579 U.S. at p. 330; see 18 U.S.C. § 1962(c).) The latter makes it unlawful to conspire to, inter alia, commit such a violation. (18 U.S.C. § 1962(d); *RJR Nabisco,* at p. 330.) "The statute defines 'racketeering activity' to encompass dozens of state and federal offenses, known in RICO parlance as predicates. These predicates include any act 'indictable' under specified federal statutes, . . . as well as certain crimes 'chargeable' under state law . . . and any offense involving bankruptcy

23

or securities fraud or drug-related activity that is 'punishable' under federal law . . . . A predicate offense implicates RICO when it is part of a 'pattern of racketeering activity' — a series of related predicates that together demonstrate the existence or threat of continued criminal activity." (*RJR Nabisco,* at pp. 329-330.)

The statute of limitations for a RICO claim is four years. (*Rotella v. Wood* (2000) 528 U.S. 549, 552 (*Rotella*).) Although that aspect of the statute of limitations became clear in the late 1980s (*Agency Holding Corp. v. Malley-Duff & Associates, Inc.* (1987) 483 U.S. 143, 156), the United States Supreme Court did not provide guidance on the accrual of a RICO claim until 10 years later. Up until that time, lower courts took varying positions, with three distinct approaches emerging. Some federal appeals courts "applied an injury discovery accrual rule starting the clock when a plaintiff knew or should have known of his injury." (*Rotella*, at p. 553.) "Some applied [an] injury and pattern discovery rule . . . , under which a civil RICO claim accrue[d] only when the claimant discover[ed], or should [have] discover[ed], both an injury and a pattern of RICO activity." (*Ibid.*) And, one appeals court used a "'last predicate act' rule," under which "the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern." (*Id.* at p. 554.)

Between *Klehr v. A.O. Smith Corporation* (1997) 521 U.S. 179 (*Klehr*), and *Rotella*, the high court disposed of two of these approaches — the last predicate act rule, and the injury and pattern discovery rule. Among other things, *Klehr* recognized that a pattern of predicate acts can continue indefinitely, meaning the last predicate act rule could extend the limitations period over many decades and beyond any limit conceivably contemplated by

24

Congress.  (*Klehr*, at p. 187.)  And in *Rotella*, the high court explained that "tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern[,] rather than to the point of injury or its reasonable discovery, . . . would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete."  (*Rotella, supra*, 528 U.S. at p. 558, fn. omitted.)  Such a result is inimical to "the basic policies of all limitations provisions:  repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities."  (*Id.* at p. 555.)

Though *Klehr* and *Rotella* limited the possibilities, the Supreme Court made clear it was not settling upon a final rule.  (*Rotella, supra*, 528 U.S. at p. 554, fn. 2.)  Among the remaining options it identified are an injury discovery rule and a straight injury occurrence rule, with the latter stemming from a concurring opinion in *Klehr*.  (See *id.* at pp. 553-554 & fn. 4.)

The Ninth Circuit has long followed the more plaintiff friendly injury discovery rule, which has two aspects.  (See *Kurtz v. Goodyear Tire & Rubber Co.* (9th Cir. 2021) 859 Fed.Appx. 22, 24 [noting Supreme Court has not disturbed injury discovery rule]; *Grimmett v. Brown* (9th Cir. 1996) 75 F.3d 506, 511 (*Grimmett*).)  The first aspect is the general rule:  the civil RICO limitations period begins to run "when the plaintiff knows or should know that [they have] been injured."  (*Grimmett*, at p. 512.)  "The plaintiff need not discover that the injury is a part of a 'pattern of racketeering' for the period to begin to run."  (*Ibid.*)  The second aspect, referred to as the separate accrual rule, concerns the impact of additional injuries that postdate the initial injury.  "[A] new cause of action accrues for each new and independent injury."  (*Id.* at p. 510.)  As *Grimmett* explained, two elements are required to trigger a new, separate accrual:  (1) there must "be a new and independent

25

act that is not merely a reaffirmation of a previous act"; and (2) the new and independent act "must inflict new and accumulating injury on the plaintiff." (*Id.* at p. 513, italics omitted.)

Turning to this case, the complaint alleges more than one dozen times, using slight variations of wording, that the purported racketeering activity "injur[ed] [them] in their property by causing loss of their homes." This is consistent with RICO's civil action requirement of an injury to a person's business or property.[11] (18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co., Inc.* (1985) 473 U.S. 479, 496-497.)

Other allegations tie that loss to two sets of purported actions taken by Judge Moss, referred to by plaintiffs as "the judge 'fix.'" The first set concern the Original Action. The complaint alleges: "Starting in 2014, [Judge Moss] routinely ruled against [p]laintiffs and the law and facts. He engaged in willful judicial misconduct by intentionally disregarding the law to cause [p]laintiffs to lose their case." It further states that in October 2014, "Judge Moss reversed Judge Stock, declaring that [p]laintiffs had no 'real property interest consisting of their [Association] membership and membership lease,'" and by doing so "Judge Moss permitted the [Association] to take a senior's home with only a Board of Directors vote; he permitted

_____

[11] For the first time in their reply brief, plaintiffs claim their injury was a "denial of due process." This belated assertion contradicts the allegations in the complaint, and plaintiffs do not provide any authority for the proposition that a due process violation, alone, can amount to a cognizable RICO injury. And for good reason; the right to due process, itself, is not a property or business interest. (See *Phillips v. Washington Legal Foundation* (1998) 524 U.S. 156, 164 [due process clause protects rather than creates property interests].) At best, plaintiffs' argument could be construed to claim the purported due process violation resulted in the wrongful taking of their property without just compensation. This brings us back to the loss of home property related injury.

26

illegal strict foreclosure." That determination was later incorporated into the March 2016 Original Action judgment.

The second set of purported actions taken by Judge Moss relate to the Haugen Action. According to the complaint, in December 2015, Judge Moss engaged in ex parte communications with certain coconspirators, he "'self-re-qualifi[ed],'" reassigning the Haugen Action back to himself, and he continued the ex parte hearing on the TRO which sought to immediately stop the impending sale of the mobilehome park property. A deed making the sale official allegedly was recorded four hours after Judge Moss took those actions.

These allegations demonstrate the RICO claims are barred by the four-year statute of limitations. They reveal plaintiffs arguably knew or should have known of their alleged property injury no later than October 2014 or December 2015, but certainly no later than March 2016. Thus, the RICO claims needed to be filed by March 2020. But plaintiffs did not file the complaint until more than two years later, in July 2022.

Plaintiffs contend they did not sustain injury for RICO purposes until rehearing was denied on appeal in the Original Action in January 2019 after issuance of the 2018 appellate decision. From their perspective, because an appealed judgment is not final, injury did not occur until the appellate court affirmed the lower court judgment.

We are not persuaded. First, plaintiffs do not provide any legal authority to support their position. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [appellant has burden of demonstrating reversible error with citation to legal authority].) Contrary to their assertions, that an appealed judgment is not final for res judicata purposes under California law until the appeal is resolved (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954, fn. 11, disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th

27

563, 574, fn. 4), is not determinative of when a RICO injury occurs. (See *Laird v. Blacker* (1992) 2 Cal.4th 606, 618 (*Laird*) [injury is concept distinct from finality of judgment]; *Diaz v. Gates* (9th Cir. 2005) 420 F.3d 897, 900 [en banc] [RICO injury determined by reference to state law principles concerning cognizable business or property interest].)

Second, as the trial court noted, although an appellate decision in the Chodosh plaintiffs' favor might have lessened the damage caused by the Original Action judgment, the injury nonetheless existed once the claimed property interference occurred by way of the judgment. (See *Grimmet, supra*, 75 F.3d at pp. 516-517 [mere fact that extent of injury may be uncertain does not impact RICO cause of action accrual].)

We find analogous a situation involving legal malpractice which leads to an adverse trial court judgment. Our state high court and other state courts have rejected the argument that the statute of limitations on the legal malpractice claim would not begin to run until final resolution of an appeal. (See, e.g., *Laird, supra,* 2 Cal.4th 609; *Seed Co. Limited v. Westerman* (D.C. Cir. 2016) 832 F.3d 325, 334; *Beesley v. Van Doren* (Alaska 1994) 873 P.2d 1280, 1282 & fn. 1 [accumulating state cases]; *Zimmie v. Calfee, Halter & Griswold* (Ohio 1989) 538 N.E.2d 398, 402.) In that context, the injury occurs no later than "when a client suffers an adverse judgment or [upon] order of dismissal in the underlying action" (*Laird,* at p. 609), and "[t]he 'lingering hope' that an appellate ruling might lead to a different outcome on remand is 'irrelevant for purposes of determining' the date the statute of limitations begins to run" (*Seed Co. Limited,* at p. 334). Among other things, "the only difference between affirmance and reversal is the amount of damage sustained," not the fact of damage. (*Belden v. Emmerman* (Ill.Ct.App. 1990) 560 N.E.2d 1180, 1183.) And, an exhaustion of appeals rule

28

would "allow clients, with knowledge that they have suffered actual injury, unilaterally to control the commencement of the statute of limitations" and thereby undermine the statute of limitations goal of "resolving cases while the evidence is fresh, witnesses are available, and memories have not faded." (*Laird,* at p. 618.) The same is true with a RICO action, like the present, in which the alleged injury is a result of purported actions by judges and others involved in trial court proceedings.

Third, even assuming arguendo the Original Action appeal precluded the Original Action judgment from being a RICO injury while the appeal was pending, the injury linked to the sale of the mobilehome property in December 2015 which allegedly resulted from wrongful actions by defendants and Judge Moss in the Haugen Action still stood. The pendency of the appeal in the Original Action had no impact on the Haugen Action.

For the first time in their reply brief, plaintiffs claim "'new evidence'" impacts the RICO statute of limitations in two ways. First, they contend defendants' supposed concealment of the new evidence tolled the limitations period. Second, they argue the new evidence shows new injury, which triggers a new statute of limitations under the separate accrual rule. Having failed to raise these arguments in their opening brief, plaintiffs have waived them. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 (*Aptos Council*) ["Issues not raised in the appellant's opening brief are deemed waived or abandoned"]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 (*Jones*) ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].) And, plaintiffs would be no better off had they been properly raised. There is no legal authority to support the tolling of the limitations period where the complaint, along with judicial noticed matters,

demonstrates plaintiffs knew or had reason to know of the claimed RICO injury prior to being aware of the purported new facts. Further, even under plaintiffs' claimed sequence of events, there would be no new RICO injury. The suggested new evidence concerns additional conspiratorial actions, but the argument is that those additional actions failed to remedy the original property deprivation. Put another way, plaintiffs claim those additional actions reaffirmed the underlying property related injury; the injury is the same. (See 18 U.S.C. § 1962(c) [RICO injury is to business or property].)

In sum, the trial court did not err in concluding plaintiffs' RICO claims are barred by the statute of limitations.

## B. *Set Aside of the Prior Judgment*

Plaintiffs' cause of action to set aside a prior judgment concerns the Original Action. It alleges plaintiffs, who were among the Chodosh plaintiffs, were denied a fair trial in the Original Action due to extrinsic fraud and, therefore, they are entitled to "a new trial with impartial jurists." The associated relief requested is "[a] declaration that the judgment entered by Judge Moss and affirmed on appeal . . . [is] and [was] void for fraud on the court because [p]laintiffs were deprived of an impartial court, such that [p]laintiffs are entitled to a new trial before an impartial court where the judicial officers are not bribed and not subject to JAMS' influence."

Courts possess the inherent equitable power to set aside a judgment obtained through extrinsic fraud; "'[a] showing of fraud practiced in the trial of the original action will not suffice.'" (*Estate of Sanders* (1985) 40 Cal.3d 607, 614.) An action seeking such a set aside is either subject to the three-year statute of limitations set forth in section 338, or simply subject to the principles of unreasonable delay and/or laches. (*Hudson v. Foster* (2021)

30

68 Cal.App.5th 640, 668, fn. 5 [identifying split of authority and listing cases on each side].)

Plaintiffs contend "there can be no three-year limit on [their] claim to overturn the JAMS driven judgment." We need not decide whether a three-year statute of limitations is appropriate. The trial court applied both possible timeliness standards, giving plaintiffs the benefit of the doubt by assuming the set aside cause of action did not accrue until the denial of appellate rehearing in the Original Action in January 2019. Assuming a three-year limitations period, the attempt to set aside the judgment was at least six months too late. And instead assuming the unreasonable delay standard governs, plaintiffs do not challenge the court's untimeliness conclusion and, thus, have forfeited the issue. (*Aptos Council, supra*, 10 Cal.App.5th at p. 296, fn. 7; *Jones, supra*, 26 Cal.App.4th at p. 99.)

## C. Unjust Enrichment

"Unjust enrichment is not a cause of action . . . or even a remedy, but rather ""a general principle, underlying various legal doctrines and remedies"". . . . [Citation.] It is synonymous with restitution." [Citation.] Unjust enrichment has also been characterized as describing "'the result of a failure to make restitution . . . .'"" (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 (*McBride*).)

In reviewing whether the complaint pleads facts which would entitle plaintiffs to relief, we look to the actual gravamen of the complaint and ignore erroneous or confusing labels. (*McBride, supra*, 123 Cal.App.4th at p. 387.) Although not expressly stated, given the remainder of the complaint's allegations, we construe plaintiffs' unjust enrichment claim to be grounded in fraud. (See *id.* at p. 388 [construing noncontract based unjust enrichment allegations to be quasi-contract claim for restitution due to

31

fraud].) As such, it is subject to a three-year statute of limitations, with accrual occurring upon plaintiffs' discovery "of the facts constituting the fraud." (§ 338, subd. (d); *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 338.)

Plaintiffs do not argue the trial court should have used a different statute of limitations, and their opening brief does not articulate any claimed error in its application to their unjust enrichment allegations.[12] The attempt in their reply brief to tie in the same new evidence tolling argument asserted in the RICO context is of no avail, as the failure to raise it earlier amounts to waiver of the issue. (*Aptos Council, supra*, 10 Cal.App.5th at p. 296, fn. 7; *Jones, supra*, 26 Cal.App.4th at p. 99.)

IV.

COLLATERAL ESTOPPEL

The trial court found collateral estoppel to be an independent basis for sustaining the demurrer to plaintiffs' claim for a set aside of the Original Action judgment. In doing so, it relied on the appellate decision in the Original Action, as well as the Ninth Circuit's dismissal of the federal RICO complaint which rejected an extrinsic fraud argument made by plaintiffs. Plaintiffs appear to misunderstand the trial court's collateral estoppel determination as applying to their RICO claims, arguing the appellate decision in the Original Action did not consider a RICO conspiracy. Even so, our determination the trial court did not err in sustaining the

_____

[12] Even assuming arguendo, as plaintiffs generally advocate, the unjust enrichment resulted from the 2018 appellate decision in the Original Action and the January 2019 denial of rehearing, the unjust enrichment allegations would be time barred because the limitations period would have expired in January 2022, six months before the filing of the complaint.

demurrer as to each cause of action on statute of limitations grounds precludes the need to reach the question of collateral estoppel.[13]

V.

LEAVE TO AMEND

"In the case of . . . a demurrer . . . , leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action." (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Plaintiffs do not request leave to amend or address the court's denial thereof. Accordingly, they have forfeited the issue and we do not consider the propriety of the trial court's denial of leave to amend.

VI.

SECTION 128.7 SANCTIONS

Evans' challenge to the sanctions order does not concern the propriety of the type or amount of sanctions; rather, it only challenges the trial court's imposition of sanctions against him. Among other things, he contends the lack of a contempt holding against him in the Original Action proves the Judge Moss "fix" is true, the various lawsuits in which plaintiffs were involved were not repetitive and had disparate purposes, the federal lawsuit dismissals are of no import as they did not go to the merits of the underlying allegations in those cases, and the instant RICO action is not

---

[13] For the same reason, we also do not reach the alternative grounds for sustaining the demurrer offered on appeal by defendants Fidelity, Thomas, and Wood.

33

factually or legally frivolous. On the record before us, we do not find the imposition of sanctions to be an abuse of discretion.

Section 128.7 "authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 514 (*Musaelian*).) Specifically, subdivision (b) states that an attorney or unrepresented party who signs, files, submits, or advocates regarding, a pleading or other written matter, thereby "certify[ies] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) [i]t is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[;] [¶] (2) [t]he claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[;] [¶] (3) [t]he allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[;] [¶] [and] (4) [t]he denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." (§ 128.7, subd. (b).)

"Subdivision (c) authorizes sanctions for a violation of subdivision (b)" (*Musaelian, supra,* 45 Cal.4th, at p. 516), with a focus on whether the person's conduct was objectively, not subjectively, unreasonable (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 (*Guillemin*)). Based on the statutory language, sanctionable matters generally fall into three categories: "factually frivolous (not well grounded in fact); legally frivolous (not warranted by

34

existing law or a good faith argument for the extension, modification, or reversal of existing law); and papers interposed for an improper purpose." (*Ibid*.) In deciding whether to impose sanctions, a court must also consider "whether the party seeking sanctions exercised due diligence." (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1205.) "Subdivision (d) limits the sanction 'to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated' and provides that a sanction may include payment 'of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.' Finally, subdivision (e) requires the court to describe the conduct determined to constitute a violation of [the] section and explain the basis for the sanction imposed." (*Ibid*.)

"We review a section 128.7 sanctions award under the abuse of discretion standard. [Citation.] We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 190 (*Bucur*).) "[W]e may affirm the court's sanctions order on any ground supported by the record." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.) Because section 128.7 is modeled on, and almost identical to, rule 11 of the Federal Rules of Civil Procedure (rule 11), federal case law construing rule 11 is persuasive in evaluating a sanctions decision made pursuant to section 128.7. (*Guillemin, supra*, 104 Cal.App.4th at p. 167.)

Here, the trial court imposed sanctions based on a statement in *Bucur*: "Filing a new complaint based on the same facts to evade a ruling made in a previous litigation constitutes sanctionable conduct under section 128.7." (*Bucur, supra*, 244 Cal.App.4th at p. 191.) In its written order, the

35

court provided three primary bases for concluding that "is exactly what [p]laintiffs' have done here." It explained: "The [c]ourt of [a]ppeal rejected [plaintiffs] allegations about Justice Trotter in [the JAMS Action], holding they had no admissible evidence of the scheme to force a settlement by threatening to tell Judge Stock what happened at mediation"; "[t]he [c]ourt of [a]ppeal similarly rejected their allegations about Judge Moss and the 'fix' in the [Original Action] opinion"; and "the [c]ourt of [a]ppeal rejected [p]laintiffs' allegations about the function of the Commission on Judicial Performance." And, as the court put it: "Having been thrice rejected, [p]laintiffs combined all three sets of allegations into a single RICO conspiracy. This is exactly the sort of frivolous litigation *Bucur* holds sanctionable. Plaintiffs cannot evade the [c]ourt of [a]ppeal's prior rulings by repackaging their rejected allegations with new labels and insisting that every judge who previously ruled against them was part of a conspiracy."

The principle expressed in *Bucur* stems from a combination of all three categories of sanctionable matters previously mentioned — factual frivolousness, legal frivolousness, and improper purpose. (See *Bucur, supra*, 244 Cal.App.4th at pp. 189-191.) When an attorney files a lawsuit grounded in allegations that were factually or legally dispelled or disposed of in prior litigation related proceedings in which they were involved, a reasonable conclusion to draw is that the attorney has buried their head in the sand and failed to make an objectively reasonable inquiry into the factual and legal basis for the allegations. Another objectively reasonable conclusion that follows is that the lawsuit has been brought for an improper purpose.

Having thoroughly reviewed the record, including judicially noticed matters, we cannot say there was a manifest miscarriage of justice. Rather, justice appears to have been served.

36

Over the course of nearly a decade, and in the context of no less than one dozen lawsuits, Evans has filed a veritable mountain of pleadings, declarations, briefs, and other documents, and made oral assertions, expounding grand conspiracy theories involving defendants and nearly any judicial officer, neutral, and government official who has failed to give his clients the relief he feels is due. With each new decision or response received, and each new judicial officer retirement, the conspiracy grows. And upon each legal dead-end reached, there is an attempt to pivot to get around the roadblock.

Under these circumstances, it is virtually inevitable that what arguably may have been objectively reasonable actions at their origin, at some point will turn and evolve into objectively unreasonable conduct — i.e., something that "'any reasonable attorney would agree . . . is totally and completely without merit.'" (*Bucur, supra*, 244 Cal.App.4th at p. 189.) The trial court implicitly concluded that point was reached, a conclusion which we find reasonable. Every substantive response provided by an individual, government entity, or law firm at which fraud and conspiracy allegations have been hurled has been a resounding denial. And, whenever a court has had the opportunity to review the accusations in some manner, the common threads articulated have been that the accusations are pure speculation, they improperly rely on irrelevant material or silence as an admission of wrongdoing, no evidence of a conspiracy has been produced, and the persons or entities who purportedly failed to follow the law in order to harm Evans' clients have not erred.

There is no doubt Evans has been at the forefront of it all, aware of each response and each judicial decision. Yet he has marched on in state court, federal court, and back again. Along the way, courts of review have

37

cautioned him three times regarding the possibility of sanctions for frivolous claims or contemptuous acts. The most recent came from the Ninth Circuit in 2021 and warned "this litigation . . . is now perilously close to frivolity." (*Chodosh, supra*, 2021 U.S.App. Lexis 37151.)

This case, the most recent in the seemingly endless parade, rests on the same purported wrongdoing and claimed injury raised, in part or in full, at some point in those other contexts. And, a reasonable attorney in Evans' shoes, performing a reasonable prefiling inquiry into the claims alleged in the complaint, would have determined the claims were time barred under well-established law and there was no available "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subd. (b)(2).)

We recognize section 128.7 "should be utilized only in 'the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1121.) Indeed, it "'"must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously,"'" which may include "'"read[ing] a case or an agreement in an innovative though sensible way."'" (*Id.* at p. 1121, fn. 9.) Effective representation sometimes compels attorneys to take the lead in evolution of the law, and the sanctions statute should not be transformed into a bar to such progress. (*Guillemin, supra*, 104 Cal.App.4th at p. 168, citing *Operating Engineers Pension Trust v. A-C Co.* (9th Cir. 1988) 859 F.2d 1336 [regarding rule 11].)

But, on this record, those concerns are not extant. The trial court sensibly concluded this is one of the rare and exceptional situations in which section 128.7 sanctions are warranted.

## DISPOSITION

The challenged orders are affirmed.  Respondents are entitled to costs on appeal.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.